# CHARLESTON.

## MINERAL RIDGE MANUFACTURING CO. v. SMITH.

### Submitted February 20, 1917.   Decided March 6, 1917.

1. EVIDENCE—*Parol Evidence—Contract to Furnish and Install Machinery.*

    Where plaintiff agrees in writing to furnish certain machinery and install it in defendant's coal tipple, guaranteeing it to perform the work intended by the buyer and specifying in writing the character of work it will do, parol evidence is not admissible to prove what the buyer intended, at the time of its execution, it would do.   (p. 737).

2. APPEAL AND ERROR—*Sales—Compliance with Guaranty—Verdict.*

    Whether such guaranty has been complied with is a question of fact to be determined by the jury, and when the testimony in respect thereto is so conflicting as to render the matter uncertain, the finding of the jury is conclusive.  (p. 742).

3. EVIDENCE—*Declaration—Terms of Written Contract.*

    Evidence of prior or contemporaneous declarations of the parties to a written contract containing no latent ambiguity, is not admissible to explain its terms.   (p. 742).

Error to Circuit Court, Mason County.

Action of assumpsit by the Mineral Ridge Manufacturing Company against A. E. Smith, doing business, etc.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Rankin, Wiley* and *Chas. E. Hogg,* for plaintiff in error.

*George S. Wallace,* for defendant in error.

WILLIAMS, JUDGE:

Defendant seeks by this writ of error to reverse a judgment recovered against him in an action of assumpsit for breach of promise to pay a stipulated price for having his coal tipple equipped with certain machinery for screening, weighing and loading coal.   The contract sued on was reduced to writing, and is in the form of a proposition.   It was submitted to and accepted by defendant on the 20th of May, 1912.   Defendant pleaded the general issue, gave notice of his purpose to re-

coup damages, and also filed two special pleas averring what the several parts of the machinery were intended to do, and alleging particularly wherein they fail to perform the work intended by the defendant and contemplated by said contract; and further that the machinery never did operate without vibration, as contemplated by the contract; wherefore he claims he has been damaged to the extent of $4,167. Defendant operates his coal mine in the name of Jackson Coal & Mining Company.

The first assignment of error relates to the refusal of the court to permit defendant to prove, by parol testimony, what work he intended the machinery to perform. The plaintiff having expressly guaranteed the machinery to perform the work "intended by the buyer," it is insisted that parol evidence was admissible to explain his intention, on the ground that it was not expressed in the written contract and, therefore, the contract was incomplete in that respect and, consequently, parol evidence was admissible to supply the omission, and explain the ambiguity. Admitting that parol evidence, even of the previous or contemporaneous declarations of the parties, is sometimes admissible to explain latent ambiguities in written contracts, this is not a case in which that rule, or exception rather to the general rule respecting the admissibility of parol evidence to contradict, vary or add to the terms of a writing, can be applied, for the reason that no latent ambiguity is made to appear. Neither do we agree with the learned counsel for defendant in his contention that the contract is silent as to defendant's intention. The contract is as follows:

"Jackson Coal & Mining Co.,
      Hartford, W. Va.

Gentlemen:

We propose to furnish you with the following equipment for the price and terms as follows:

SHAKER SCREENS—Two shaker screens each hung on 7 chilled iron wheel supports, with bearings 2 1-4″ diameter, Sides of screens to be 1-4″ plate; screen plates 1-4″ thick— perforations to suit you. All corner angles to be 5-16″ thick;

top and cross angles 1-4″ thick; eccentrics to be set 180 degrees, or opposite to each other, so screens will operate without vibration. Driving shaft to be 3 7-16″ diameter, with 60″ fly wheel, all to be geared to suit the 15-H.P. motor furnished by you, with necessary shafts, bearing, gears, etc., and to be built in accordance with B. P. No. B-2183.

HOISTING RIGGING—We are to furnish all the necessary iron work to install a new hoisting apparatus for your weigh pan, excepting only the counter weights.

WEIGH PAN—One-back dumping weigh pan built with 5-16″ bottom plates, 1-4″ side and end plates, all angles to be 5-16″ thick, together with all necessary iron work to hang and operate same.

END LOADER—One curved chute end loader as shown on B. P. B-2183, together with all necessary iron work to hang and operate same.

BINS—One (1) slack bin under nut screen and chutes to shaker screen and slack bin and bin under slack part of shaker.

One (1) bin under nut screen with sliding door; one (1) bin under egg screen with sliding door; also furnish one (1) sliding door for slack bin, which you are to build in accordance with the plans we furnish for bin. In furnishing these bins it is part of the contract, that we furnish all necessary hangers to attach to the structure and levers to operate the sliding doors. The load plates in egg and nut bins are to be 1-4″ plate; all other plates used 3-16″.

BOX CAR LOADER—One box car loader and chute from end loader with double outlet together with all necessary supporting irons to attach to structure and operate this to be similar to the one shown on E. L. Sternberger blue print, except it will have to be located at side of tipple—but it will operate along similar lines.

All the before mentioned material to be in accordance with B. P. No. B-2183, plans to be furnished and accepted, and all workmanship and material to be of the very best. We to guarantee it to perform the work intended by buyer and will replace any part proving defective in workmanship and material for one year from date of contract.

PRICE—$1,845.00 F. O. B. Mineral Ridge, Ohio.

TERMS—One-third contract price to be paid on receipt of Bill-of-lading, showing material has been shipped, one-third thirty days after first shipment, and balance on acceptance.

ERECTION—We will furnish a skilled mechanic to superintend the erection and starting of the plant, at the rate of $6.00 per day and traveling expenses, one round trip. You to pay for his work every regular pay-day.

SHIPMENT—At this writing we can promise 35 days shipment, and on receipt of notice material has been received will at once send the mechanic to erect same.

A working drawing to be made up at once and sent to you for your approval, and changes you may desire then, will be made without additional cost, if they do not require additional material.

We are also to furnish one (1) dump plate, 5 ft. long x 6 ft. wide, with fly 2 ft. wide opening, and one (1) hipped plate to bolt on dumping plate. This is part of the contract price.

Yours very truly,

Mineral Ridge Mfg. Co.,

Thad M. Boggs, Salesman.

Accepted May 20, 1912.

The Jackson Coal & Mining Co.,

By A. E. Smith.''

Appended to or indorsed on the paper was also the following memorandum, which is a part of the contract, viz.:

"Take off slack to slack bin. Load Nut on 3 track. Load Nut and Slack on 3 track. Load Mine Run on 1 track. Load Nut and Egg on 2 track. Load Egg on 2 track. Load Lump on 1 track. Load Lump and Egg on 1 track. Load Box Cars on 1 track, with chute and valve. Guarantee apparatus to work well, and produce Clean Nut, Clean Egg, and Clean Lump Coal. Shakers so balanced and constructed as to make little or no vibration."

The foregoing contract appears to be full and complete. It expresses the agreement of the parties, and is not ambiguous respecting the work intended to be performed by the various parts of the equipment. The blue prints mentioned

in the contract, were made from measurements of the tipple taken by plaintiff's agent, and they, including one showing the working plan, were submitted to and approved by defendant before the machinery was installed. The equipment was completed in September, 1912, and defendant contends it did not work as it was guaranteed to work. He and other witnesses for him were permitted to testify fully respecting the particulars wherein the various parts of the equipment failed to perform the work they were guaranteed to do. But there was direct conflict between his witnesses and the witnesses for plaintiff on this point. William W. Heron, who became plaintiff's general manager after the machinery had been installed, says he visited defendant's plant about April 21, 1913, and found all parts of the machinery in use and working, except the weigh pan which was blocked open, and the reason it was not working was it did not have sufficient height and, consequently, did not drop properly. He swears he found no defect either in the material or the workmanship of installation. Later plaintiff sent two other men, C. H. Stigleman and C. E. Shawver, to defendant's plant. Stigleman, who had an experience of about fourteen years in erecting machinery, swears he was there in May, 1913, and spent about two weeks; that all parts of the machinery were then being used, except the weigh pan and the box car loader, and the reason the weigh pan didn't work was because it didn't have the height. He says he lowered the screen so that the weigh pan could drop the coal on the shaker screen, and also put a new chute, or box car loader on the screen. The first one had a curved end, according to the original design, and he took it off and put on a straight one. These changes, he says, were made with the approval of defendant who went with him to Pomeroy to examine the working of other loaders of like kind; and, he testified, that after he had made these changes, defendant expressed himself as satisfied. Mr. Shawver, plaintiff's superintendent of construction, swears he made two visits to defendant's plant in June, 1913, and was there about four days the first time and seven days the second. He said he made a careful inspection of the machinery, and that "all parts of the job seemed to be correct in every

way.'' He admits, however, that he attached some parts that seemed to be called for,—a hopper under the egg screen and a screen under the nut screen. The screen, he said, was extra. He says he also put some repair bars on the nut screen, which were extra. On his second trip he says he made a curve or diversion in the end chute, which seems to be the second change made in it, and put on a chute, running from the hopper back to the slack bin, and tightened up some of the bearing that had been loosened by the vibrations. He says he didn't try to do anything with the box car loader because defendant, or his sons who were there in charge of the plant told him not to, because they had tried it a number of times and knew it wouldn't work, but says he could have made it work, and states as the reason why it wouldn't work, that the railroad track on which the lump coal was to be loaded was higher on the side next to the tipple and tilted the car away from the tipple, and thus made it hard to load it. All the things which plaintiff had guaranteed it would do, so as to cause the equipment to perform the work intended, were fully gone into in the testimony, and the jury had to determine, from the conflicting testimony, whether the guaranty had been fulfilled. Being complete and unambiguous in respect to any of its terms or provisions, parol evidence of statements between the contracting parties, previous to or contemporaneous with the execution of the written contract, is not admissible to vary or contradict it, or add anything to it. 10 Ency. Dig. Va. & W. Va. Cases, 650. So far as it concerns the rejection of defendant's parol evidence, offered to explain the written contract, complete on its face, this case falls clearly within the principles stated and applied in *Griffin* v. *Runnion,* 74 W. Va. 641. It can not be said the contract is incomplete because it contains a guaranty to do the work intended by the buyer, and does not expressly state what his intention was, when the writing clearly shows on its face what the work was that was to be performed by the machinery. If it was defendant's intention that it should do work other than what was expressed in the writing, he should have had it incorporated therein. Parol evidence is

not admissible to prove an unexpressed intention to enlarge the scope of the written guaranty.

It is contended that the court improperly rejected parol evidence offered for the purpose of proving that Boggs, plaintiff's agent who made the written contract on its behalf, told defendant the machinery could be adjusted to the tipple as it was then constructed, and no lowering of the floor or other changes in the tipple would be necessary. For the reasons already given, we think this evidence was properly excluded. It was a declaration of the acting agent of one of the parties, made contemporaneously with the execution of the written contract, and would tend to prove a qualifying provision, if admitted. If the machinery was to be installed, without alteration of the tipple, it should have been so expressed in the writing.

Defendant assigns as error the refusal of the court to allow him to prove that it would cost $500 to replace the alleged faulty box car loader with one that would work. We find that later, this same witness was permitted to so testify without objection, in answer to another question. Therefore, assuming that the testimony was proper, defendant was not prejudiced.

There is no complaint that the material or the workmanship, in respect to any of the machinery, was defective, and whether it would, and actually did the work well and in the manner specified and as guaranteed by plaintiff, were disputed facts to be determined by the jury. Defendant and some of his other witnesses testified that certain parts of the machinery would not do the work intended, and could not be made to do it well. On the other hand, plaintiff's witnesses, Stigleman and Shawver, testified to the contrary, and Stigleman swore defendant expressed himself as satisfied, after he had made certain readjustments in May 1913. We have no right to disturb the finding of the jury on such conflicting testimony.

Complaint is also made of the court's refusal to admit certain correspondence between the parties, consisting of telegrams and letters written after the machinery had been installed. Witnesses testified fully in regard to all the matters

and things complained of in the correspondence. Plaintiff's witnesses did not dispute anything contained in them, and so far as those written by defendant are concerned, they are only self-serving declarations, and were properly excluded.

We find no error in the rulings of the court upon the admission or exclusion of evidence. So far as the record discloses but one instruction was given to the jury. It was given on request of plaintiff and was, in effect, that the writing was the exclusive evidence of the contract, which could not be altered or varied by parol evidence, and that plaintiff was bound only by the express warranty contained therein. This instruction correctly propounded the law applicable to the case. The judgment is affirmed.

*Affirmed.*