HOPE NATURAL GAS CO., *a Corporation v.* CLYDE REYNOLDS *et al.*

(No. 9544)

Submitted January 18, 1944. Decided March 7, 1944.

*David Williams* and *Haymond Maxwell,* for appellant. *Powell, Clifford & Jones,* for appellees.

KENNA, JUDGE:

The Hope Natural Gas Company filed its bill of complaint in the Circuit Court of Harrison County praying to have interplead Clyde Reynolds, J. L. Thrasher, Margaret Primm Reynolds, the National Valley Bank of Staunton, a Corporation, Trustee, The Shenandoah Valley Joint Stock Land Bank of Staunton, a Corporation, and the Virginian Joint Stock Land Bank of Charleston, a Corporation, for the purpose of settling a controversy between certain of the defendants concerning the ownership of the oil and gas underlying a tract of one hundred and seventy-six acres located in Eagle District of Harrison County, being a part of a tract of six hundred acres upon which it held an oil and gas lease from Ai J. Reynolds and Lydia E. Reynolds, his wife, both then deceased, dated July 5, 1904, Hope having drilled a producing gas well upon the tract of one hundred and seventy-six acres and being in doubt as to whom, as between the conflicting interests of Clyde Reynolds and J. L. Thrasher, it should pay one-third of the royalty accrued since January 1, 1935, at the rate of twenty-five dollars per quarter. From a decree entered after the incoming of answers and cross-bills by Clyde Reynolds and J. L. Thrasher, and the taking of proof, that adjudicated the controversy in favor of Clyde Reynolds, this appeal was granted upon the petition of J. L. Thrasher.

In order to attempt to set forth the matter in controversy clearly it will be necessary to recite the salient allegations of the bill of complaint, and the answers of Clyde Reynolds and J. L. Thrasher.

The bill of complaint alleges that Ai J. Reynolds and wife on the fifth day of July, 1904, executed an oil and gas lease to the plaintiff upon six hundred acres of land in Harrison County owned in fee by Reynolds, and that in April, 1907, a paying gas well was drilled upon that part thereof which is now the one hundred and seventy-six acres in controversy designated upon its records as Well No. 900, and that from time to time other wells

not on the land in controversy have been drilled by it on the Reynolds tract of six hundred acres; that in 1907 Ai J. Reynolds died intestate leaving surviving him his widow and Clyde Reynolds, Frank L. Reynolds and Frances R. Cranwell, sons and a daughter, and that the widow also died many years ago. The bill further alleges that in 1909 the widow, who was then living, and the three heirs executed separate deeds for the purpose of effecting a partition of the six hundred acre tract as recommended by three agreed commissioners, subject to the assignment of dower to the widow and that pursuant to the agreement a tract of one hundred and seventy-six acres, being Tract No. 2 named in the commissioners report, was partly conveyed to Clyde Reynolds in a deed executed by Frank L. Reynolds and wife, Lydia E. Reynolds, widow, and Frances E. Reynolds, now Frances R. Cranwell; that the oil and gas underlying the six hundred acres was not by the said deeds partitioned, but remained vested in the three children of Ai J. Reynolds, the royalty being paid one-third to the widow, the remainder of six-ninths being equally divided between Frank L. Reynolds, Clyde Reynolds and Frances E. Reynolds; that Well No. 900 is the only producing well upon the tract of one hundred and seventy-six acres allotted to Clyde Reynolds.

The bill of complaint further alleges that on the sixth day of January, 1925, Clyde Reynolds and wife executed a deed of trust upon the tract of one hundred and seventy-six acres to the National Valley Bank of Staunton, Trustee, for the purpose of securing a loan from The Shenandoah Valley Joint Stock Land Bank in the amount of five thousand dollars; that default having occurred, the Trustee, on the twenty-seventh day of March, 1934, advertised the property for sale and, after several continuances, on the nineteenth day of May, 1934, the Virginian Joint Stock Land Bank of Charleston, which had acquired the assets of the trust deed creditor, became the purchaser and received a deed from the National Valley Bank, Trustee; that on October 25, 1934, the Virginian

Joint Stock Land Bank of Charleston conveyed the one hundred and seventy-six acres of land to the defendant J. L. Thrasher, and that Clyde Reynolds, by an unrecorded written contract, conveyed his interest to his wife, Margaret Primm Reynolds.

The bill of complaint goes on to allege that a controversy has arisen among the parties defendant as to who is entitled to what is spoken of as the interest of Clyde Reynolds in the gas wells upon the tract of one hundred and seventy-six acres, present and future, Clyde Reynolds asserting that the underlying oil and gas was not included in the deed of trust executed by him on January 6, 1925, and also that at the sale under the deed of trust it was expressly announced by the auctioneer that no interest in the underlying oil and gas was being offered for sale, and that Clyde Reynolds further contends that the deed executed by the Trustee to the Virginian Joint Stock Land Bank conveyed no part of the oil and gas. The bill states that on the other hand, J. L. Thrasher contends that he is entitled to a full one-third of the royalty from the one hundred and seventy-six acres and that Clyde Reynolds holds no interest therein. The bill of complaint ends with the usual allegations of lack of interest in the subject matter by the plaintiff, lack of definite opinion concerning the claims of any parties, and threatened litigation that can be prevented only by an ancillary injunction pending final determination in this cause.

The bill alleges that the complainant has, since January 1, 1935, retained one-third of the royalty, payable quarterly, to the present owner of the interest in the oil and gas underlying the one hundred and seventy-six acres inherited by Clyde Reynolds from his father, Ai J. Reynolds.

The answer and cross-bill of Clyde Reynolds, after admitting most of the allegations of the bill of complaint, sets up the fact that the deed dated the twenty-ninth day of September, 1909, between Frank L. Reynolds and

wife, Lydia E. Reynolds and Frances E. Reynolds, grantors, and Clyde Reynolds, grantee, filed as Plaintiff's Exhibit No. 2, conveyed the one hundred and seventy-six acres of land to Clyde Reynolds and excepted and reserved the underlying oil and gas. The language of that reservation is set out as follows:

> "But there is likewise reserved and excepted from this deed all of the oil and gas in, upon and underlying the premises aforesaid, as to which the heirs at law of Ai J. Reynolds remain co-parceners, and in which the said Lydia E. Reynolds retains her dower right as widow of the said Ai J. Reynolds; * * *."

The answer proceeds to allege that the trust deed executed by Clyde Reynolds and wife, to the National Valley Bank, Trustee, did not convey Clyde Reynolds' interest in the oil and gas underlying the tract of one hundred and seventy-six acres relying upon the following language appearing in the deed of trust as sustaining that allegation:

> "* * * and being the same tract or parcel of land which was conveyed to the said Clyde Reynolds by Frank L. Reynolds and others by deed of partition bearing date on the 29th day of September 1909 of record in the office of the clerk of the county court of Harrison County, West Virginia in D. B. No. 243 page 107 to which deed and the deeds and papers therein referred to reference is hereby made for more particular description and for derivation of title."

The answer and cross-bill alleges that the deed from the Virginian Joint Stock Land Bank of Charleston to J. L. Thrasher contained a specific reference to the deed from The National Valley Bank of Staunton, Trustee, and by so doing made the latter deed, together with the reservation and exception of the oil, gas and coal contained therein, a part of the deed to Thrasher; that all parties

in interest are charged with notice that the oil and gas underlying the tract of one hundred and seventy-six acres was not intended to be conveyed in the deed of trust because the deed of trust specifically refers to the partition deed in which the oil, gas and coal were specially reserved.

There are many other detailed allegations in Clyde Reynolds' cross-bill and answer including a paragraph urging that the National Valley Bank of Staunton is not authorized to do business in the State of West Virginia, and therefore could not act as Trustee; that when the property was offered for sale on March 27, 1934, the National Valley Bank of Staunton was not present and not represented by an authorized official; that this property was offered for sale in the absence of the Trustee and in the absence of any duly authorized representative of the Trustee, and that the said sale was continued from time to time from March the twenty-seventh until May the nineteenth, which continuances took place in the absence of the Trustee, and that the property was offered for sale and sold on the latter date by W. G. Stathers, attorney representing the beneficiary, at which time Stathers publicly announced that he was not offering for sale the oil and gas underlying the tract of one hundred and seventy-six acres. The answer also alleges that when J. L. Thrasher purchased the property from the Virginian Joint Stock Land Bank he was advised that it did not claim title to, and was not selling, the underlying oil and gas, and that for that reason the deed to Thrasher contains a general warranty as to the surface and a special warranty as to the mineral interests.

The answer of J. L. Thrasher alleges that Clyde Reynolds became the owner of the tract of one hundred and seventy-six acres free from the claims of the other heirs except as to coal, oil and gas which was excepted and excluded by the deed from Frank L. Reynolds and wife and Frances E. Reynolds and Lydia E. Reynolds which coal, oil and gas after the interchange of deeds was owned

generally by the three heirs of Ai J. Reynolds and that the deed to Clyde Reynolds made by Frank L. Reynolds and others dated the twenty-ninth day of September, 1909, had no effect upon the one-third of the oil and gas underlying the one hundred and seventy-six acres which had been inherited by Clyde Reynolds upon the death of his father Ai J. Reynolds.

The answer further alleges that after Clyde Reynolds, by virtue of the exchange of deeds among the three heirs of Ai J. Reynolds, became the owner of the tract of one hundred and seventy-six acres and the owner of an undivided one-third interest in all the coal, oil and gas underlying the entire tract of six hundred acres, upon that entire interest he executed the deed of trust to The Shenandoah Valley Joint Stock Land Bank; that the property conveyed in the deed of trust is therein described by copying the description contained in the deed to Clyde Reynolds quoting the part of the deed of trust relied on as follows:

> "* * * and being the same tract or parcel of land which was conveyed to said Clyde Reynolds by Frank L. Reynolds and others, by deed of partition, bearing date on the 29th day of September, 1909, of record in the office of the Clerk of the County Court of Harrison County, West Virginia, in D. B. No. 243, page 107, to which deed and the deeds and papers therein referred to reference is hereby made for a more particular description and for derivation of title."

The answer further quotes that deed as specifically referring to the fact that the heirs at law of Ai J. Reynolds owned as co-parceners the oil and gas underlying the entire tract of six hundred acres, and that by the terms of the deed of trust all of the interest of Clyde Reynolds in the one hundred and seventy-six acres was included. The answer goes on to allege Thrasher's lack of knowledge of any agreement between Clyde Reynolds and The Shenandoah Valley Joint Stock Land Bank to the effect that

the deed of trust to secure the indebtedness of Reynolds to that Bank would not include his oil and gas interest underlying the one hundred and seventy-six acres but alleges that any such oral understanding could not be shown as an attack upon the express provisions of the deed of trust. The answer further denies the averment that it was announced at the foreclosure sale by the auctioneer that the oil and gas underlying the one hundred and seventy-six acre tract was not to be sold, but alleges that to the contrary the Virginian Joint Stock Land Bank became the purchaser of all of the property covered by the said deed of trust and that that instrument was intended to, and did, cover the entire interest of Clyde Reynolds inherited by him from his father including the oil and gas underlying the entire six hundred acres. The answer alleges that Thrasher, in his negotiations with the Virginian Joint Stock Land Bank for the purchase of the one hundred and seventy-six acre tract, did not understand, nor was it mentioned, that the oil and gas interest was not to be sold, and denies that The Shenandoah Valley Joint Stock Land Bank, the National Valley Bank of Staunton and the Virginian Joint Stock Land Bank were informed and knew that the oil and gas interest was not intended to be conveyed in the deed of trust. The answer denies that at the sale under the deed of trust there was an announcement by the Trustee, or auctioneer, that the oil and gas interest underlying the one hundred and seventy-six acre tract was not to be sold. The answer concludes by alleging that the transfer of his interest in the tract of one hundred and seventy-six acres from Clyde Reynolds to Margaret Primm Reynolds his wife has no effect upon the interest now before the Court.

The proof taken had for its two main objects the establishment of the intention of the parties in the execution of the trust deed, and the deed from the Charleston Joint Stock Land Bank to Thrasher, and the question of whether Mr. Stathers, who acted for the trustee in conducting

the sale, expressly stated that he was not offering the oil and gas for sale and received bids reduced in amount on that account.

Objection was made to the introduction of oral testimony the effect of which would be to alter and vary the unambiguous terms of a contract in writing. The trial chancellor did not rule upon that objection because, in his view of the case, it was unnecessary to do so, he being of the opinion that the proof showed that the trustee did not sell the oil and gas but to the contrary cried that it was not being offered for sale.

In the absence of a latent ambiguity or an ambiguity that does not appear from an inspection of the paper alone, oral testimony is inadmissible to explain or alter the terms of a written instrument. *Snider* v. *Robinett*, 78 W. Va. 88, 88 S. E. 899; *Mineral Ridge Mfg. Co.* v. *Smith*, 79 W. Va. 736, 91 S. E. 817. See in general, Note, 68 A. L. R. 4. Being of the opinion that there was no latent ambiguity in the language of the trust deed we believe that all testimony as to oral declarations or statements concerning the interest thereby intended to be conveyed which preceded its execution should have been excluded.

While it is true that the grantors in the Clyde Reynolds deed held title to, and consequently were only conveying, the two-thirds undivided interest in the tract of 176 acres described in their deed, it is perfectly plain that the purpose of the deed and of all of the parties thereto was that the interest of the oil and gas underlying the entire six hundred acres, including the one hundred and seventy-six acres, should not be disturbed nor affected in any manner by that conveyance. Consequently all of the oil and gas, their interest and that of Clyde Reynolds, was attempted to be excepted and reserved. Furthermore, they sought to make their purpose and intention clearer by expressly stating that Clyde Reynolds and the two interested grantors would remain co-parceners of the oil and gas underlying the entire tract of six hundred acres. If the entire interest in the oil and gas

underlying the one hundred and seventy-six acres was in language expressly reserved from the Clyde Reynolds deed, and of that we think there can be no doubt, we believe that it necessarily follows as a consequence of the reference contained in the trust deed to the Clyde Reynolds deed for derivation of title, as well as description, that the trust deed adopted the language of the Clyde Reynolds deed and did not transfer title to the oil and gas to the named trustee. *Thomas* v. *Young*, 93 W. Va. 555, 117 S. E. 909. It is quite true that the deed referred to did not operate to except the oil and gas in its entirety because the grantors held title to but two-thirds thereof. But its language, standing alone, we believe. is to be given that effect.

To the contention advanced by Reynolds that at the foreclosure sale made pursuant to the trust deed title to the oil and gas was not sold and therefore did not pass in the deed of the trustee, Thrasher responds by saying that he was an innocent purchaser for value and that consequently, he not having been present at the foreclosure sale nor charged with knowledge of the trustee's announcement, he is to be treated as an innocent purchaser for value of, and as being vested with the entire title to, the one hundred and seventy-six acres. We do not believe that this position is sound nor that lack of notice can either increase or diminish the interest that was actually sold at the foreclosure sale.

This Court has recently held in the case of *Berry* v. *O'Dell*, 122 W. Va. 58, 7 S. E. 2d 340, in effect, that where the description of the property to be sold under a deed of trust is ambiguously worded, testimony as to the interpretation of the notice by the trustee conducting the sale is admissible in order to determine the property that was actually sold pursuant to the notice given. Here the notice of sale was sufficiently complicated and indefinite to be regarded, we think, as ambiguous, and as not containing a clear description of the interests of the trust deed debtor to be offered by the trustee. It followed

the description contained in the trust deed, and, as illustrative of the trust deed's ambiguity, the decree under consideration seems predicated primarily upon the supposition that the trust deed *did* convey the oil and gas, but that it was not sold by the trustee. This Court has just concluded that the trust deed did *not* convey the oil and gas, consequently differing with the trial chancellor as to the meaning of the trust deed's language. Since the notice followed the trust deed's language, the same difference of view, demonstrating its ambiguity, would hold as to it. To our minds there can be no doubt as to the effect of the holding in the *O'Dell* case upon the rights of the parties concerned under the circumstances that we consider clearly established by a preponderance of the evidence now before us. The notice of sale we believe was unquestionably ambiguous. We think it is clearly established that the person conducting the sale announced that the oil and gas was not being sold. Mr. W. G. Stather's testimony concerning his announcement is not positive for the reason that he had no written record and had acted so often in similar capacities that it was impossible for him to make an exact statement concerning it. Two witnesses, however, stated that they recollected distinctly that he had announced prior to the sale that the oil and gas would not be sold. There is no testimony to the contrary. It seems clear that under the rule enunciated in the *O'Dell* case based, as we have pointed out, upon an ambiguous notice of sale and applicable to no other situation, the trial chancellor's decree was correct in holding that no title to the oil and gas was sold by the trustee and consequently that his deed pursuant to foreclosure would not pass title to the oil and gas. However, under our view of the case it becomes unnecessary to consider that question, since if the deed of trust transferred no title to the oil and gas, none could have passed regardless of what the trustee cried for sale.

The trustee did not act in the sale under the deed

of trust beyond signing the notice and executing deed. Mr. W. G. Stathers acted in its stead, and it is admitted that the trustee-corporation was not otherwise represented. The question is not raised and would not affect the title of an innocent purchaser for value. However, we wish to call attention to the fact that an individual trustee cannot delegate his power to sell. See *Smith* v. *Lowther*, 35 W. Va. 300, 13 S. E. 999; *Copelan* v. *Sohn*, 75 W. Va. 83, 82 S. E. 1016.

On the basis of the foregoing discussion an order will be entered here modifying the decree of the Circuit Court of Harrison County so that its conclusion will be that the oil and gas underlying the tract of one hundred seventy-six acres was not conveyed in the trust deed executed by Clyde Reynolds and wife on the 6th day of January, 1925, to National Valley Bank of Staunton, Trustee, and the title to the said oil and gas did not pass by virtue of the deed from National Valley Bank, Trustee, to Virginian Joint Stock Land Bank, dated May 19, 1934, nor in the deed from the latter to J. L. Thrasher, dated October 25, 1935, and the decree of the Circuit Court of Harrison County as so modified is affirmed.

*Modified and affirmed.*