500 S.E.2d 534

**Dr. James C. McCOY, Plaintiff below, Appellant,**

v.

**Fred VANKIRK, in his official capacity as the Commissioner of the West Virginia Division of Highways, Defendant below, Appellee,**

**and**

**Rite Aid of West Virginia, Inc., a West Virginia Corporation, Intervenor below, Appellee.**

**No. 24019.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Dec. 16, 1997.

Joyce F. Ofsa, Trina L. Leone, Mark A. Sadd, Spilman, Thomas & Battle, Charleston, for Appellant McCoy.

Anthony G. Halkias, Jeff Miller, West Virginia Division of Highways, Charleston, for Appellee Fred VanKirk.

William E. Hamb, Christopher L. Hamb, Hamb & Poffenbarger, Charleston, for Appellee Rite Aid of West Virginia.

STARCHER, Justice:

This appeal concerns the interpretation and constitutionality of *W.Va.Code*, 17–2A–19 [1994], which allows the Commissioner of the Division of Highways, appellee Fred Van-Kirk, ("Commissioner") to dispose of certain unneeded highways real estate. The dispute between the parties centers on whether, under the statute, the Commissioner may constitutionally give preferential treatment to an owner of land adjoining the highways property being sold by offering the adjoining landowner the right of first refusal to purchase the highways property for "fair market value." Under the statute, the general public (that is, persons who do not own adjoining property) must buy surplus highways property at a public auction for the "highest and best price therefor."

On September 10, 1996, the Circuit Court of Kanawha County entered an order holding that *W.Va.Code*, 17–2A–19 violates the equal protection guarantees of the United States and West Virginia Constitutions by giving preferential treatment to abutting landowners as opposed to non-abutting landowners. *See U.S. Const.*, amend. XIV; *W.Va. Const.*, art. III, § 10. The circuit court also found that the statute violates the West Virginia constitutional requirement that the object of each act of the legislature must be contained in its title. *See W.Va. Const.*, art. VI, § 30.

After reviewing the complex language of the statute, we hold that the statute requires the Commissioner to give preferential treatment to any landowner who owns land adjoining highways property when selling that property pursuant to *W.Va.Code*, 17–2A–19. We conclude that the legislative creation of this distinction between abutting landowners and the general public is rationally related to a legitimate state purpose, and does not violate equal protection. Additionally, the title of the act as amended in 1994 was sufficient to apprise any interested party of its nature, and the title thus meets constitutional requirements. We therefore reverse the circuit court's order, and remand the case for further proceedings.

## I.

### *Facts and Background*

The West Virginia Division of Highways owns a 4.65 acre plot of land in Jackson County, West Virginia, and has used the land since 1942 for its county maintenance garage. In 1995, the Commissioner determined that the property was no longer needed for present or future highways purposes and could therefore be sold pursuant to *W.Va.Code*, 17–

2A–19 [1994].[1]   An appraiser valued the property at \$925,000.00.   The appellant, Dr.

1. *W.Va.Code*, 17–2A–19 [1994] states:

The division of highways, subject to the conditions herein, may sell, exchange, or lease real property, or any interest or right therein, held by the division of highways.

When the real property, or any interest or right therein, is being held for future road purposes, it may be leased.   When the real property, or any part thereof, or any interest or right therein, is deemed by the commissioner not necessary, or desirable for present or presently foreseeable future highways purposes, it may be exchanged for other real property, or any interest or right therein, deemed by the commissioner to be necessary or desirable for present or presently foreseeable future highways purposes, or it may be sold.   In addition the division may exchange real property, or any part thereof, or any interest or right therein, even though it may be necessary or desirable for present or presently foreseeable future highways purposes, if the exchange is made for other real property, or any interest or right therein, in close proximity thereto which the commissioner deems of equal or superior useful value for present or presently foreseeable future highways purposes.   In making exchanges the division may make allowances for differences in the value of the properties being exchanged and may move or pay the cost of moving buildings, structures, or appurtenances in connection with the exchange.

Every such sale of real property, or any interest or right therein or structure thereon, shall be at public auction in the county in which the real property, or the greater part thereof in value, is located, and the division shall advertise, by publication or otherwise, the time, place, and terms of the sale at least twenty days prior thereto.   The property shall be sold in the manner which will bring the highest and best price therefor.   The division may reject any or all bids received at the sale.   The commissioner shall keep a record, open to public inspection, indicating the manner in which such real property, or any interest or right therein or structure thereon, was publicly advertised for sale, the highest bid received therefor and from whom, the person to whom sold, and payment received therefor.   The record shall be kept for a period of five years and may thereafter be destroyed.

The commissioner may transfer, sell, or otherwise dispose of any right-of-way properties or any interest or right therein, owned by or to be acquired by the division of highways which the commissioner in his or her sole discretion shall determine are not necessary or desirable for present or presently foreseeable future highways purposes by first offering the same to the principal abutting landowners without following the procedure for public auction hereinbefore set forth in this section.

The commissioner shall adopt and promulgate rules in accordance with the provisions of article three, chapter twenty-nine-a of this code governing and controlling the making of any leases or sales pursuant to the provisions of this section, which rules may provide for the giving of preferential treatment in making leases to the persons from whom the properties or rights or interests therein were acquired, or their heirs or assigns and shall also provide for granting a right of first refusal to abutting landowners at fair market value in the sale of any real estate or any interest or right therein owned by the division of highways.

Notwithstanding any other provision of this section to the contrary, with respect to real property acquired subsequent to the year one thousand nine hundred seventy-three for highways purposes through voluntary real estate acquisition or exercise of the right of eminent domain, which real estate the commissioner has determined should be sold as not necessary for highways purposes, the commissioner shall give preferential treatment to an abutting landowner if it appears that:

(1) A principal abutting landowner is an individual from whom the real estate was acquired or his or her surviving spouse or descendant.   In order to qualify for preferential treatment, the surviving spouse or descendant need not be a beneficiary of the individual.   The terms used in this subdivision are as defined in section one, article one, chapter forty-two of this code; and

(2) The primary use of the abutting property has not substantially changed since the time of the acquisition.

When the foregoing conditions are met, the commissioner shall offer the property for sale to the principal abutting landowner at a cost equal to the amount paid by the division of highways in acquiring the real estate:   Provided, That if improvements on the property have been removed since the time of the acquisition, the cost shall be reduced by an amount attributable to the value of the improvements removed:   Provided, however, That the cost may be adjusted to reflect interest at a rate equal to the increase in the consumer price index for all urban consumers as reported by the United States department of labor since the time of disbursement of the funds.

The commissioner may insert in any deed or conveyance, whether it involves an exchange, lease, or sale, the conditions as are in the public interest and have been approved in advance by the governor.

All moneys received from the exchange, sale, or lease of real property, or any right or interest therein, shall be paid into the state treasury and credited to the state road fund.

Notwithstanding the provisions of this section, property shall not be transferred, sold or otherwise disposed of unless the commissioner finds that the right-of-way or other property has no significant value to the state as a hiking trail and does not serve as a link between two or more state owned properties, except that any such property that lies within six hundred feet of any dwelling house may be transferred, sold or other-

James McCoy, owns (and has owned since approximately 1974) a plot of land that abuts the highways property. The appellant also owns several other nearby non-abutting plots that he has developed for commercial use.

In February 1996, the Commissioner announced that the aforementioned highways property would be sold at a public auction. On February 26, 1996, the appellant filed this declaratory judgment action against the Commissioner to stop the auction, arguing that *W.Va.Code*, 17–2A–19 requires that highway property first be offered for sale to abutting landowners at fair market value before being publicly auctioned. On March 2, 1996, the appellant and the Commissioner negotiated an agreed order that allowed the sale of the property by public auction, subject to a right of first refusal in any abutting property owners.

The Commissioner held a public auction on April 19, 1996. Several commercial interests placed bids on the property, but the highest bid was made by the intervenor below and appellee, Rite Aid of West Virginia, Inc. ("Rite Aid"), for $1.45 million. The appellant was present at the auction but did not bid.

By letter dated May 2, 1996, the Commissioner offered to sell the property to the appellant according to his statutory right of first refusal; however, the Commissioner determined the fair market value of the property to be the auction bid of $1.45 million. On June 4, 1994, the appellant wrote that he agreed to exercise his right to purchase the property, but reserved the right to challenge the manner in which the Commissioner determined the fair market value of the property. Shortly thereafter, the appellant filed a motion for the determination of fair market value with the circuit court.

Appellee Rite Aid filed a motion to intervene in this declaratory judgment action on May 8, 1996, arguing that by giving preferential treatment to abutting landowners such as appellant McCoy, *W.Va.Code*, 17–2A–19 violated the equal protection clauses of the United States and West Virginia Constitutions. *See U.S. Const.*, amend. XIV; *W.Va. Const.*, art. III, § 10. Additionally, Rite Aid wise disposed of without such a finding pursuant

argued that the statute was unconstitutional because, when it was enacted in 1994, it failed to meet the West Virginia constitutional requirement that the title of legislative enactments reflect the purpose of the statute. *See W.Va. Const.*, art. VI, § 30, *infra*.

On September 10, 1996, the circuit court entered an order holding *W.Va.Code*, 17–2A–19 [1994] was not applicable to the appellant because he was not a "principal abutting landowner" as defined by the statute. Furthermore, the circuit court found *W.Va.Code*, 17–2A–19 [1994] to be unconstitutional on two grounds, concluding that it violated the equal protection clauses of the *United States Constitution* the *West Virginia Constitution;* and that it violated the West Virginia constitutional requirement that every statute enacted by the legislature express its objective in the title. Accordingly, the circuit court concluded that the Commissioner had no authority to offer the State property to the appellant for first refusal, and ordered the Commissioner to convey the property to Rite Aid. The appellant appeals the circuit court's order.

## II.

### *Discussion*

#### A. *Statutory Construction*

The central issue in this case is the interpretation of *W.Va.Code*, 17–2A–19, and the delineation of the different classes of individuals under the statute who may purchase surplus State highways property (property that the Commissioner has deemed unnecessary for present or future State highways purposes) by different means at different prices. We conclude that *W.Va.Code*, 17–2A–19 creates three different groups of potential purchasers of surplus highways property, and conclude that the circuit court erred in its interpretation of the statute and its conclusion that the appellant was not an "abutting landowner" who possessed a right of first refusal to purchase the property at fair market value.

██ "Interpreting a statute presents a purely legal question subject to our *de novo*

to the provisions of this section.

review on which neither party bears the burden of proof." Syllabus Point 1, *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 468 S.E.2d 733 (1996). We have said that "[a] statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992). The initial step in construing an ambiguous statute is to ascertain the legislative intent behind the statute. Syllabus Point 1, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983).

■ To determine the intent of the Legislature, we must examine the statute in its entirety:

In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety.

Syllabus Point 1, *Parkins v. Londeree,* 146 W.Va. 1051, 124 S.E.2d 471 (1962).

■ When construing an ambiguous enactment in light of the Legislature's intent, courts are not free to read into the language of a statute what is not there, but should apply the statute as written. *Mills v. Van Kirk,* 192 W.Va. 695, 699, 453 S.E.2d 678, 682 (1994). Undefined words and terms in a legislative enactment will be given their "common, ordinary, and accepted meaning." Syllabus Point 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds, Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). Additionally, "when a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995).

■ The Commissioner and Rite Aid contend that there are only two classes of purchasers under the statute: a "principal abutting landowner," which is defined as "an individual from whom the real estate was acquired" or their heirs, and who have a right of first refusal to purchase surplus property from the Commissioner; and the general public, who must purchase the property at a public auction. The appellant contends there is a third class: "abutting landowners" whose property adjoins surplus highways property, who have a right of first refusal to buy the property at fair market value. The appellant further contends that he is in this last class and should be allowed the first right of refusal to purchase the subject property. We agree with the appellant's construction of the statute.

We begin our analysis in this case by examining the history of *W.Va.Code,* 17–2A–19. The statute was first enacted by the legislature in 1963, and has been amended twice, in 1988 and 1994. With each amendment, the Legislature expanded the powers of the Commissioner to sell highways properties that the Commissioner deemed unnecessary for present or future highways use. However, as discussed below, the Legislature also increased the complexity of the statute, and created internal inconsistencies that underlie this case.

*W.Va.Code,* 17–2A–19 was first enacted in 1963 to allow for the disposal of real property held by the then-State Road Commission. As with the current statute, the 1963 statute allowed the Commissioner to "sell ... real property ... held by the state road commission[,]" which the Commissioner deemed no longer necessary for present or future state road purposes; the 1963 act required the Commissioner to sell the property "at public auction ... in the manner which will bring the highest and best price therefor." *Acts of the Legislature of West Virginia* (1963), chap. 160.

In 1988, the Legislature amended *W.Va. Code,* 17–2A–19 to also allow the Commissioner to sell or lease properties which were former railroad rights-of-way or were formerly used as turnpikes, and as is stated in the title of the statute, to permit "those properties to be first sold to abutting landowners without the necessity of public auction." [2] *Acts of the Legislature of West Vir-*

___

2. The title to the 1988 enactment states (with emphasis added):

*ginia* (1988), chapter 110. The Legislature introduced two terms in the text of the 1988 statute: "abutting landowners," and "principal abutting landowners." Neither term was defined, and the terms were used interchangeably.

The 1988 statute preserved the Commissioner's right to sell unneeded highways property at public auction. However, the 1988 amendments to the statute gave the Commissioner the authority to sell former railroad right-of-way properties and properties formerly used for turnpike roads "by first offering the same to the principal abutting landowners without following the procedure for public auction hereinbefore set forth in this section." *W.Va.Code,* 17–2A–19 [1988]. The statute also said that the Commissioner was to adopt rules to "provide for granting a right of first refusal to abutting landowners at fair market value in the sale or lease of former railroad right-of-way properties and former turnpike roads owned by the department of highways." *Id.*

The 1988 version of *W.Va.Code,* 17–2A–19 clearly indicated a legislative intent to create two classes of purchasers of State highways properties: abutting or adjoining landowners, and individuals who did not own adjoining property. An "abutting landowner" or "principal abutting landowner" was to be given: (a) a right of first refusal, without the use of a public auction, to purchase a railroad right-of-way or former turnpike road, (b) at fair market value. An individual who was not an adjoining landowner could purchase the State property (a) at public auction (b) for "the highest and best price therefor."

The instant case arises from the amendment of *W.Va.Code,* 17–2A–19 in 1994, where the Legislature added a definition for "principal abutting landowner," while continuing to use the term "abutting landowner." The 1994 amendments gave the Commissioner the ability to sell any highways property—

AN ACT to amend and reenact section nineteen, article two-a, chapter seventeen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, relating generally to the authority of the commissioner of highways with respect to the sale, lease, exchange or lease of certain real property acquired by the West Virginia department of highways; sale, lease or use of

not just former railroad rights-of-way and former turnpike properties—which the Commissioner deemed unnecessary for future highways purposes. Since we must give effect to each word of a statute, and cannot read words into the statute, our reading of *W.Va.Code,* 17–2A–19 [1994] leads us to the conclusion that there are now *three* classes of purchasers of State highways properties.

As the statute now reads, *W.Va.Code,* 17–2A–19 [1994] allows the Commissioner to "sell . . . real property . . . held by the division of highways." The statute further states that "every such sale of real property . . . shall be at public auction[,]" and the property "shall be sold in the manner which will bring the highest and best price therefor."

However, under the current statute the Commissioner "may . . . sell . . . any right-of-way properties . . . by first offering the same to the principal abutting landowners without following the procedure for public auction hereinbefore set forth in this section." A "principal abutting landowner" is defined as an "abutting landowner" who is "an individual from whom the real estate was acquired or his or her surviving spouse or descendant." Additionally, if any type of real property was acquired by the Commissioner after 1973 (through voluntary acquisition or the exercise of the right of eminent domain), and the primary use of the property has not substantially changed since the time of the acquisition, then the Commissioner "shall give preferential treatment to an abutting landowner" if it appears that they are "principal abutting landowners." That "preferential treatment" is that the Commissioner "shall offer the property for sale at a cost equal to the amount paid by the division of highways in acquiring the real estate[,]" plus interest and the cost of removing improvements.

The conflict in this case arises over the statute's confusing requirement that:

former railroad rights-of-way and those properties which were formerly used as turnpikes and in which the department of highways has a property interest; *and permitting those properties to be first sold to abutting property owners without the necessity of public auction.*
*Acts of the Legislature, of West Virginia* (1988), chapter 110.

The commissioner ... shall also provide for granting a right of first refusal to abutting landowners at fair market value in the sale of any real estate ... owned by the division of highways.

*W.Va.Code,* 17–2A–19 [1994]. The Commissioner and Rite Aid contend that this statutory provision is intended to apply to "principal abutting landowners." We reject this interpretation because the word "principal" is absent from this statutory provision; we decline to read into the statute a term that is conspicuously absent.

Our rules of statutory construction constrain us from adding terms to a statute, and require us to give undefined terms their common, ordinary and accepted meaning. The appellant contends the Legislature intended through this provision to allow *any* adjoining property owner the right of first refusal to buy highways property "at fair market value." We agree. Our review of the history of *W.Va.Code,* 17–2A–19 leads us to the conclusion that the Legislature intended to create a preference for *any* adjoining landowners and not merely adjoining landowners from whom the property was initially acquired by the Division of Highways.

Under *W.Va.Code,* 17–2A–19, we conclude that there are three classes of potential purchasers of highways property that the Commissioner has approved for sale. The first group is the general public, individuals who do not own property adjoining highways property approved for sale by the Commissioner, and who are accorded no special rights under the statute. For this class of purchasers, the Commissioner must (a) sell the property to individuals who do not own adjoining property at a public auction (b) for the highest and best price therefor.

The second and third classes of purchasers are both types of abutting landowners, and both are accorded preference under the statute. *Webster's Third New International Dictionary* (1970) defines "abut" as "to touch at one end, border on ... to touch (as of contiguous estates) along a border or with a projecting part." Hence, under *W.Va.Code,* 17–2A–19 [1994], an "abutting landowner" is an individual who owns real property that borders on or touches real property being offered for sale by the Commissioner of the Division of Highways. A "principal abutting landowner" is an individual who owns real property that borders on or touches real property being offered for sale by the Commissioner, and who is also an individual from whom the real property being sold by the Commissioner was acquired or his or her surviving spouse or descendant.

The second group of purchasers, "abutting landowners," are individuals who: (a) must be given a right of first refusal to purchase that highways property from the Commissioner (b) at fair market value.

The third class of purchaser (which is essentially a sub-class of "abutting landowners") is a "principal abutting landowner." A principal abutting landowner is an abutting landowner, and is also a landowner from whom (directly or indirectly by descent) the property being sold by the Commissioner was acquired. This class of principal abutting landowners is accorded additional rights to repurchase the real estate. The Commissioner "may" (a)(1) offer to sell or transfer to a principal abutting landowner any surplus right-of-way properties (2) without following the procedure for public auction; or (b)(1) as to property acquired by the Commissioner after 1973 which has not been substantially changed, the property must be offered for sale to principal abutting landowners (2) "at a cost equal to the amount paid by the division of highways in acquiring the real estate," plus interest and certain costs.

We therefore conclude that the circuit court erred in its interpretation of the statute. We hold that under *W.Va.Code,* 17–2A–19 [1994], all abutting landowners (whether "principal abutting landowners" or not) must receive preferential treatment when the Commissioner chooses to sell state highways property that the Commissioner has determined is not necessary for present or future use. The statute directs that the Commissioner must offer to sell property acquired after 1973 that has not substantially changed since its acquisition to principal abutting landowners at a cost equal to the amount paid in acquiring the real estate, plus costs and interest. The Commissioner may also first offer to sell right-of-way property to

principal abutting landowners without following the procedures for a public auction. The Commissioner must offer all other abutting property owners (*i.e.*, not "principal abutting landowners") the first right to purchase the highways property for fair market value.

Accordingly, under the facts of this case, we conclude that the circuit court erred, and hold that under *W.Va.Code*, 17–2A–19 [1994] the Commissioner is required to offer to the appellant, an abutting landowner, the right of first refusal to purchase the Jackson County property at fair market value.

### B.

### *Constitutional Analysis*

#### 1.

#### *Equal Protection*

The appellant contends that the circuit court erred in its finding that the statute's granting of special purchasing rights to abutting landowners violated the equal protection guarantees found in *U.S. Const.*, amend. XIV,[3] and *W.Va. Const.*, art. III, § 10.[4] The appellant argues that our equal protection jurisprudence does not contain a test of whether there is a "good and valid reason" for economic legislation, as was used by the circuit court. Instead; the appellant urges that the test is whether there is a "rational relationship" to some legitimate state purpose, and argues that there are legitimate state goals that are rationally met by *W.Va. Code*, 17–2A–19. We agree.

■ We begin by noting that the unconstitutionality of a statute must be shown beyond a reasonable doubt. Our standard for reviewing the constitutionality of statutes was set forth in Syllabus Point 1 of *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965), where we stated:

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

*In accord*, Syllabus Point 1, *West Virginia Trust Fund, Inc. v. Bailey*, 199 W.Va. 463, 485 S.E.2d 407 (1997); Syllabus Point 1, *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996); Syllabus Point 4, *State ex rel. W.Va. Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969).

■ In examining the constitutionality of legislation implicating economic rights (such as *W.Va.Code*, 17–2A–19) under the West Virginia equal protection clause, we apply a "rational basis" test. We said in Syllabus Point 4 of *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991):

> " 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper

---

3. *U.S. Const.*, amend. XIV, states in pertinent part, with emphasis added:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*

4. *W.Va. Const.*, art. III, § 10 states:

No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

We stated in Syllabus Point 4 of *Israel by Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) that our "constitutional equal protection principle is a part of the Due Process clause" found in *W.Va. Const.*, art. III, § 10.

governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984).

 Similarly, under the United States Constitution, economic classifications created by a legislature "need only be tested under the lenient standard of rationality that [the United States Supreme Court] has traditionally applied in considering equal protection challenges to regulation of economic and commercial matters. Under that standard a statute will be sustained if the Legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Exxon Corp. v. Eagerton,* 462 U.S. 176, 195–96, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497, 513 (1983) (citations omitted). Under this highly deferential standard, economic legislation will be affirmed "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Federal Communications Comm'n v. Beach Communications, Inc.,* 508 U.S. 307, 314, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993).

 Rite Aid argues that there is no legitimate purpose to be rationally served by granting a right of first refusal "indiscriminately" to all individuals with land abutting Division of Highways property. It argues that the circuit court's conclusion that there was "no good or valid reason" for the distinction between adjoining landowners and non-adjoining landowners is the same as a finding that the classification lacks a rational relationship to a legitimate state purpose. Rite Aid goes one step further, and argues for a rule that "a challenged classification should be sustained only if it is rationally related to the achievement of an *actual* government purpose." Rite Aid essentially argues that, because the Legislature did not state the

purposes of *W.Va.Code,* 17–2A–19 within the act itself, we cannot rely on common sense and deductive reasoning to infer any state purpose for any piece of legislation. We reject this argument.

We can conceive of numerous legitimate state purposes to which the statute is rationally related. For example, our jurisprudence recognizes that real property is unique, and that a landowner will often want to add to his or her land holdings by purchasing adjoining property. Further, the value of property is often influenced by the use of adjacent lands. In essence, a landowner has a vested economic and social interest in the quality and character of his or her land and the neighboring properties; strangers to a neighborhood may not have the best interests of the neighborhood in mind. Another significant and laudatory effect of the statute is to prevent the acquisition of "spite strips" of land, and to prevent pernicious speculation by those persons and entities better able to afford to bid a higher price for the property.

The Legislature could certainly seek to preserve these interests by allowing abutting landowners the first right to purchase surplus State highways property from the Commissioner. Accordingly, we find that the preferences granted to abutting landowners as opposed to non-abutting landowners under *W.Va.Code,* 17–2A–19 are rationally related to legitimate State interests, and hold that the statute is constitutional under the equal protection clauses of the *United States Constitution* and *West Virginia Constitution.*

2.

*Constitutionality of the Title of the Act*

The third issue raised by the appellant is whether the title of the bill which enacted *W.Va.Code,* 17–2A–19 [1994] violated W.Va. Const., art. VI, § 30 by not expressing objects which were embraced in the bill. We conclude that *W.Va. Const.,* art. VI, § 30 was not violated.

*W.Va. Constitution,* art. VI, § 30 requires that the object of an act passed by the Legislature must be expressed in the act's title. It states, in pertinent part:

No act hereafter passed, shall embrace more than one object, and that shall be

expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. . . .

■ We have held that this constitutional provision serves two salutary purposes:

First, it is designed to give notice by way of the title of the contents of the act so that legislators and other interested parties may be informed of its purpose. Second, it is designed to prevent any attempt to surreptitiously insert in the body of the act matters foreign to its purpose which, if known, might fail to gain the consent of the majority.

Syllabus Point 1, in part, *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988).

■ When determining whether an act of the Legislature violates *W.Va. Const.*, art. VI, § 30, we will construe the language and title of the act in "the most comprehensive sense favorable to its validity." Syllabus Point 2, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958). In Syllabus Point 2 of *State ex rel. Walton v. Casey*, *supra*, we stated our test for examining whether an act of the Legislature complies with the Constitution:

The requirement of expressiveness contemplated by W.Va. Const. art. VI, Sec. 30 necessarily implies explicitness. A title must, at a minimum, furnish a "pointer" to the challenged provision in the act. The test to be applied is whether the title imparts enough information to one interested in the subject matter to provoke a reading of the act.

In other words, "[i]f the title of an act states its general theme or purpose and the substance is germane to the object expressed in the title, the title will be held sufficient." Syllabus Point 1, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958).

■ The relevant portion of the title of the Act which amended *W.Va.Code*, 17–2A– 19 in 1994 reads as follows: "AN ACT . . . relating to the sale, exchange or lease of real property by the commissioner of highways; permitting adjoining landowners right of first refusal in certain instances; determination of sale price." *Acts of the Legislature of West Virginia* (1994), chapter 145.

The title clearly indicates that the Legislature was enacting a statute which would allow for the sale of State highways properties, and that adjoining landowners would be allowed the right of first refusal to purchase those properties. The title of the statute imparts enough information to provoke a reading by the Commissioner; by any individual interested in purchasing property from the Division of Highways; and by individuals whose land abuts Division of Highways properties.

Accordingly, we hold that *W.Va. Const.*, art. VI, § 30 was not violated since the title of the bill amending *W.Va.Code*, 17–2A–19 [1994] should have provoked a reading of the act by the appellees.

## C.

### *Fair Market Value*

In *Mills v. VanKirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994), we interpreted the 1988 version of *W.Va.Code*, 17–2A–19, and evaluated the Commissioner's decision to sell former turnpike property. In *Mills* we addressed the definition of the term "fair market value" under the statute, and concluded that "fair market value does not necessarily equal the highest and best price." 192 W.Va. at 701, 453 S.E.2d at 684. We reviewed the Commissioner's valuation of property for sale in that case under an abuse of discretion standard, and held that the Commissioner had determined the fair market value of the subject property in an unbiased manner consistent with the statute. 192 W.Va. at 701–02, 453 S.E.2d at 684–85.

In this case, the circuit court concluded that *Mills* was not controlling precedent "because the events and litigation involved in that case occurred prior to the 1994 Amendment to W.Va.Code § 17–2A–19 and involved former rights of way property." The circuit court also did not address the appellant's

argument that the Commissioner had abused his discretion in setting the fair market value of the Jackson County property at the auction price of $1.45 million. We disagree with the circuit court's conclusion that *Mills* is not applicable, and order on remand that the circuit court consider our holding in that case.

 In general, "[t]he market value ... is the price for which the land could be sold in the market by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, and unaffected by compulsion of any kind." Syllabus Point 5, *Wheeling Elec. Co. v. Gist,* 154 W.Va. 69, 173 S.E.2d 336 (1970). In *Mills, supra,* we defined "fair market value" under *W.Va.Code,* 17–2A–19 [1988] as "the price a willing party would pay for the property when there is no compulsion on any of the parties." 192 W.Va. at 697, 453 S.E.2d at 680. We acknowledged that "[f]air market value is a rather elusive concept," 192 W.Va. at 701, 453 S.E.2d at 684, but we went on to suggest that "[u]sing an objective method to establish value is a well recognized technique for establishing fair market value." 192 W.Va. at 702, 453 S.E.2d at 685.

We stated in *Mills* that "the language and structure of the statute [*W.Va.Code,* 17–2A–19 [1988]] suggest that the Legislature used fair market value instead of highest and best price in order to differentiate the price that the Commissioner should obtain when offering the property to abutting landowners as opposed to the general public." 192 W.Va. at 702, 453 S.E.2d at 685. In this case, the appellant has indicated he is willing to purchase the property at an objectively determined "fair market value;" the Commissioner has valued the property at the highest and best price obtained at auction, or $1.45 million.

 We agree with the appellant that auction value should not be used by the Commissioner as the exclusive measure of fair market value. However, on remand we believe that the circuit court may rely upon the auction value of the property as evidence of its fair market value; however, the auction value is not its exclusive measure. The Commissioner must be able to show that the

auction process was fair, voluntary and free of duress, and that the auction process was not subjected to influences which might artificially inflate or reduce the auction bids. Essentially, the circuit court should determine if the auction value is substantially similar to that value which would be had by individuals willing to buy and sell without compulsion.

### III.

### *Conclusion*

For the foregoing reasons, the circuit court's order of September 10, 1996 is reversed and the case is remanded for a determination of the fair market value of the property pursuant to *Mills, supra.*

Reversed and remanded.