# CHARLESTON

BANK *et al.* *v.* CATZEN *et al.*

Submitted January 28, 1908.    Decided February 11, 1908.

1. DEEDS—*Construction—Intent ·f Parties.*

In deeds, contracts and other instruments, both technical and non-technical words are sometimes given meaning variant from the significations they ordinarily have, and, when it is manifest that the parties intended them to have a restricted or peculiar significa- tion, such intention will be respected and enforced by the courts. (p. 539.)

2. EVIDENCE—*Parol Evidence—Explanation of Deed.*

When, in attempting to apply a deed to its subject matter or the parties thereto, a latent ambiguity of any kind is disclosed, parol evidence is admissible to a limited extent, to show what was intended, not only by the instrument considered as a whole, but also by particular words or clauses thereof. (p. 540.)

3. SAME.

Parol evidence, admissible for such purpose, is generally limited to the subject-matter, the relation of the parties thereto, their prior and subsequent conduct, their situation, and all the facts and cir- cumstances existing at the time of the execution of the instrument. (p. 540.)

4. DEED—*Description of Property—"Eastern One-half."*

The terms "eastern one-half.," in a deed conveying one-half of a tract of land, in the absence of admissible parol evidence, disclos-

ing a different intention, would mean the eastern half, formed by a line to be run due north and south through the tract; but, if it appears that, before the deed was executed, a division into two parts, supposedly equal in area, had been made by a line, having a different bearing, actually marked on the ground by stakes and fences, according to which possession had been held for a number of years, and the parties have since held possession according to such line, the words must be taken to mean the eastern one-half as so laid off and held in severalty.  (p. 540.)

Error to Circuit Court, McDowell County.

Action by H. Bank and others against Aaron Catzen and others.  Judgment for plaintiffs, and defendants bring error.

*Reversed.  Remanded.*

RUCKER. ANDERSON, STROTHER & HUGHES, for plaintiffs in error.

COOK & HOWARD, for defendants in error.

POFFENBARGER, PRESIDENT:

Judgment for the plaintiff in an action of ejectment, rendered by the circuit court of McDowell county, on an agreed statement of facts, in favor of H. Bank and others against Aaron Catzen and others, is the matter complained of here.

G. H. Lawson, the owner of a tract of ten acres of land, irregular in form, but oblong, the longer lines thereof running northeast and southwest, and the shorter lines northwest and southeast, conveyed one-half thereof to G. B. Buchanan, by a deed which describes the part conveyed as follows: "One half interest in a certain tract of land containing ten acres, said one-half interest to be taken off the west end of said tract of land." Prior to the execution of this deed, and in anticipation of the purchase of one-half of the land by Buchanan, he and Lawson went upon the land and attempted to divide it equally, by establishing a line through the same on which stakes were driven at intervals of a few feet, and building a fence on each side of the line so marked, leaving a lane about ten feet wide between the fences. Later, Lawson and wife entered into a contract with H. Bank and W. H. Show for the sale of "the eastern half of the tract." Still later, Buchanan and wife conveyed to Aaron Catzen their part of the land, describing it as "being the west end of said tract." Then Lawson and wife conveyed to Bank,

Show and one Levinstein, in pursuance of the contract above mentioned, "the eastearn *on-half* of said ten acres of land." This conveyance was made May 1, 1906, and, since that date the parties have held possession in accordance with the line marked out by Lawson and Buchanan on the 26th day of September, 1900. It has since been ascertained that this line does not divide the land equally. The western end held by Catzen, contains 1 76-100 acres more than the eastern end, held by Bank and others, wherefore, to make an equal division by quantity, Bank and others are entitled to 88-100 of an acre of the land now in Catzen's possession. It is agreed that, at the time the division line was established, the parties did not know the magnetic course thereof, and that, at the time of the execution of the deed to Buchanan, there was an agreement between the parties thereto to so change the line "as to conform to the intention of the parties as expressed in the deed," if it did not do so as it was then established. The benefit of objections to the admissibility of any of the agreed facts was reserved by a stipulation in the agreement as to the facts.

This action was brought not only to recover the 88-100 of an acre, but to obtain it in such manner as to change all together the line established before the deeds were executed. This line is almost parallel with the northeastern line of the entire tract, the course of which is S. 11° E., while that of the division line is S. 13° E. The demand set up in the declaration is based upon the location of a division line running due north and south, on the theory that the deed contemplates such a line. A recovery of the land demanded would change both termini of this division line, throwing the north end east and south end west. This is vigorously resisted by Catzen because the effect of it would be to take practically all of the additional land out of what is regarded as his frontage, land suitable for building purposes, now very valuable because of its location and character. Catzen insists that, if the plaintiffs are entitled to the additional area, the whole line should be set over so as not to change the form of his land, nor to take an undue portion of the part thereof that is suitable for building purposes.

As the terms, "the eastern one-half of the ten acres of land," conveyed to the plaintiffs by Lawson and wife, had,

at the time of the execution of the deed, a certain fixed and
definite meaning, acquired by the previous conduct of the
parties thereto and others interested in the property, well
known to them, and, therefore, undoubtedly fixed in their
minds at the time of the consummation of the conveyance,
we must assume that these words were used in that sense,
although in the absence of any proof of this circumstance,
the parties would be deemed to have intended a division into
two equal parts by a line running due north and south. The
eastern half of the tract had, at that time, been designated
and marked out and identified. The land so identified was
the subject matter of the conveyance. It had a well defined
character. It was a marked, ascertained half, not one to be
cut off. By the designation thereof, its form, as well as its
quantity, had been determined. That which had been done
to it, by way of designation and marking, must be deemed
to have been as much within the contemplation of the parties
as the subject matter of the deed itself, it being then part of
the subject matter. Although the line previously established
does not run due north and south, substantially and practi-
cally, it divided the land into an eastern part and a western
part, each of which was supposedly one-half of the tract.
The line had been established for the purpose of dividing it
into two equal parts. Those who made that line assumed that
they had so divided it, and, when the parties to this deed
made their preliminary agreement and carried it into execu-
tion by the preparation and delivery of the deed, they sup-
posed that an equal division had been made; but, by way of
precaution, they entered into a verbal agreement to change
the line so as to make the division equal, if, on a survey, it
should prove not to be so. The primary object of the deed,
as disclosed by its terms, was to convey one-half of the land
and the verbal agreement being subsidiary in character. like-
wise had for its object the securing of the requisite quantity.
Nothing in the deed or the verbal agreement necessarily con-
flicts with the meaning of the words "eastern half," impress-
ed upon them by the previous conduct of the parties. The
line had been staked out and a fence built on each side of it,
so that it is impossible to suppose that anybody contemplated
anything other than one-half as it had been so marked upon
the ground, if, upon a survey, it should prove to amount to

one-half. Now that it has been ascertained not to embrace
the quantity contemplated, the intention of the parties will
be fully affectuated, by moving the line far enough westward
to give the plaintiffs an additional 88-100 of an acre. Though
the word "eastern" may be regarded as a technical term, the
attempt to apply it to the subject matter, a thing well known
to the parties, and therefore, necessarily within their contem-
plation, shows that it was never intended to have effect
according to its literal meaning.

That technical terms are not, and need not, always be
used by the parties to a contract in their technical sense, is
very well settled by the authorities. Like non-technical
words, they sometimes have peculiar meaning, ascertained
by reference to the subject matter, the situation and purposes
of the parties and the surrounding circumstances. "Where
a technical word is used, evidently in a sense different from
its technical signification, the court will give to it the con-
struction which the grantor intended. A grantor has the right
to assign to words in the deed a meaning different from that
which they ordinarily bear." Devlin on Deeds, section 837.
"The court will not resort to arbitrary rules of construction,
if, without so doing, the intention of the parties can be as-
certained. The deed and its descriptive clauses will be con-
strued as any other contract would be. When a doubtful
description is to be construed, the court should endeavor to
assume the position of the parties, the circumstance of the
transaction should be carefully considered, and in the light
of those circumstances, the words should be read and inter-
preted." *Id.* section 1012. This principle was applied in
*Armstrong* v. *Ross*, 61 W. Va. 738, in which a contract pur-
ported by certain terms used in it to convey all the coal in a
certain tract of land, but bore evidence on its face, by refer-
ences to other documents and otherwise, of intention, on the
part of one party, to sell, and, on the other, to buy, only one
of the several veins of coal, it appearing that, at the time,
they knew of only one vein, wherefore, it was presumed that
they had no intention of selling and buying, respectively,
any other vein. It is true that the documentary evidence in
that instance disclosed this intention, but we said that, if it
had not, it would have been proper and allowable to estab-
lish it by extraneous evidence and thereby accomplish the

same result. In all such cases, a latent ambiguity is disclosed by the attempt to apply the deed to its subject matter, or to the parties. Thus, in *Simpson* v. *Dix*, 131 Mass. 179, parol evidence was admitted to determine whether the grantee was Daniel Eastman, Jr., or Daniel Eastman, Sr., no addition to the name having been inserted in the deed to show which was intended. In *Kingford* v. *Hood*, 105 Mass. 495, the lease called for the "Adams House, situated on Washington Street in Boston." When an attempt was made to apply the lease to the property, it was found that certain parts of the building were used for hotel purposes and others for shops, and a doubt arose as to whether it was the intention to lease the entire property or only so much of it as was used for hotel purposes, and parol evidence was admitted to prove that only the parts used as a hotel were intended. In *James* v. *Pashby*, 48 Mich. 634, it was held that although the word "half," when used in describing lands, should be applied literally, if nothing to the contrary appears in the contract, there is no universal rule that the word should be so interpreted, for it is often used in conveyances when the context indicates a sense quite different. It was further declared that two parts of a farm separated by a river or a highway may be called the two halves without having much regard to their relative quantity, since, in surveys, the word "half" is often used quite as loosely, but without the least confusion; and that, in all such cases, the word must be taken in the sense indicated, if that is evident, and if not, the accompanying circumstances and the subsequent acts of the parties may direct the court to the true meaning. In the recent case of *Higgins* v. *Round Botom Coal Co.*, decided at the last term of this Court, the word "southward" in a deed, was held to cover land west and southwest, as well as land directly south. So in *List, Trustee*, v. *Cotts*, 4 W. Va. 543, the word "east" was construed, in view of the purposes disclosed by the deed and surrounding circumstances, to include land lying southeast of the point mentioned. These authorities and the general rules of construction applied by them, amply justify the conclusion that the word "eastern" is open to explanation by the introduction of parol evidence; and, the evidence being admitted, there is no shadow of doubt that the parties intended a conveyance of the eastern half as it had been marked out on the ground.

It is unnecessary to say whether, in the absence of a stipulation, the verbal agreement to alter the line so as to make the division conform to the intention of the parties, made at the date of the execution of the deed, is admissible as evidence, or in other words, may be treated as a circumstance, a fact, bearing on the construction of the deed, and so be read into, and made a part of it.   Though there is a reservation of the  benefit of all legal objections to the admissibility of the facts agreed, there is a special agreement relating to this particular fact,  which brings it in for the purposes of this case.   The defendants concede the right of the plaintiffs to have the whole line removed  westward  far enough to give the plaintiff an additional 88-100 of an  acre,  provided  the new location be parallel to the old,  and say they have  been willing at all times to make such an adjustment of the matter in controversy.   Though it is thus brought into the case, and would give the plaintiffs the right to a judgment for the strip of land between the  old location and the  proposed new one, it does not appear how  far  it would be necessary to remove it.   Part  of  the land adjudged to the plaintiffs would  be included in such strip, but a large portion thereof would not. It is impossible to tell how much of  the land recovered they are  entitled to, and the proposed  adjustment will give them land neither recovered nor demanded in  the declaration.   In this  state  of  the  case,  it will be necessary to reverse the judgment and remand the case, with leave to  amend  the declaration, and award costs in this Court to the plaintiffs in error.

*Reversed.   Remanded.*