MAMIE BERRY *v.* W. H. O'DELL *et al.*

(No. 8997)

Submitted January 17, 1940.  Decided February 13, 1940.

*J. Blackburn Watts, Frank L. Taylor* and *D. W. Taylor,* for appellant.

*A. P. Hudson* and *B. J. Pettigrew,* for W. H. O'Dell and Mullins, appellees.

*Mohler, Peters & Snyder, Charles Peters* and *Robert Merricks,* for Charleston National Bank, trustee.

Fox, Judge:

Mamie Berry, who claims to be the owner of the minerals in tracts of 61.60 acres and 44.70 acres of land situated in Kanawha County, instituted her suit seeking to set aside certain deeds for the said minerals, as a cloud upon her title. Demurrers to her bill were sustained with leave to amend, and she electing not to amend, the bill was dismissed, and the cause comes to us on appeal.

On the 23rd day of February, 1915, Martha J. Dawson and her husband conveyed to M. C. Berry and Mamie Berry three tracts or parcels of land, containing 31¼ acres, 61.60 acres, and 44.70 acres. This conveyance was made subject to a deed of about the same date, by which the Dawsons conveyed to J. E. Parsons 26 acres, reserving the mineral rights therein. On January 18, 1926, the Berrys conveyed to The Kanawha National Bank, Trustee, the said three tracts of land and an additional tract, to secure to the Virginian Joint Stock Land Bank the payment of a loan of $1,000.00. Default was made in the payment of this loan, and on the 26th day of October, 1935, the said lands were sold by The Charleston National Bank, a successor trustee, and, according to the contention of the appellees herein, were purchased by the Virginian Joint Stock Land Bank at the price of $1,150.00. This controversy arises out of what actually was sold by the trustee and purchased by the Land Bank, and the dispute particularly arises out of certain language in the notice of sale, and statements allegedly made at the time of the sale by the person who conducted the same.

The notice of sale is in regular form, and specifies the several tracts of land which were to be offered for sale. Following this, the notice contains this language:

"There will be excepted from the sale hereunder all of the mineral rights and the Berry right-of-way heretofore conveyed and reserved;"

The bill alleges that the appellant sent her husband, M. C. Berry, together with her two brothers-in-law, to at-

tend said sale, and that on the occasion of the sale the person who conducted the same "read the said notice in a loud voice and then stated publicly that he was selling no minerals underlying said tracts of land, but was offering for sale the surface thereof only", and that after said statement the successful bid was made and accepted. On the same date The Charleston National Bank, Trustee, conveyed the four tracts of land to the Virginian Joint Stock Land Bank, without any special reservation of the minerals in the two tracts of 61.60 and 44.70 acres above mentioned, although the deed was executed subject to reservations theretofore made. On April 7, 1936, the Land Bank conveyed all the property acquired by it under said deed to W. H. O'Dell, who, on July 6, 1937, leased the tracts of 61.60 and 44.70 acres for oil and gas purposes to the Mullins Gas Company, describing the same as 106¼ acres, and later contracts were entered into between the Gas Company and said O'Dell, dealing with the oil and gas in said lands, and there was a conveyance of an interest therein. On the other side of the controversy, it appears from the record that on December 10, 1935, M. C. Berry and Mamie Berry conveyed to Georgie M. Berry all the "petroleum oil, natural gas, lime stone coal and all other minerals" underlying the two tracts of 61.60 and 44.70 acres mentioned above, and, on January 6, 1936, Georgie M. Berry and her husband conveyed said minerals to Mamie Berry, the appellant herein, who now claims to be the sole owner thereof.

The bill sets up the conveyances above detailed and avers that no minerals were sold by the trustee; that the trustee was not authorized to make conveyance thereof to the Land Bank; that the Land Bank acquired no title thereto under the reputed conveyance and, therefore, could convey none to O'Dell; that O'Dell took title to said land with notice of appellant's claim because of the execution and recordation of the two deeds above mentioned by which title to the oil and gas became vested in the appellant and, therefore, was not an innocent purchaser, for value. The appellant also avers that she

did not have notice of conveyance of the said minerals to the Land Bank until long after its conveyance to O'Dell, and that she did not have knowledge of the lease made by O'Dell to the Mullins Gas Company until August, 1938, some two months prior to the institution of this suit.

The Mullins Gas Company and W. H. O'Dell filed their joint demurrer to the plaintiff's bill upon the following grounds: (1) that they were innocent purchasers for value, of the property involved; (2) that the recordation of the deeds to appellant and her predecessor did not constitute notice of any hostile claim to the property involved; and (3) that it appears from the face of the bill of complaint that the plaintiff therein was guilty of laches. The trustee filed its demurrer on the ground that the person conducting the sale could not, by verbal outcry or otherwise, change the quantum of what was being offered for sale from that stated and described in the notice of sale. Each of the said demurrers was sustained by the court.

On account of the nature of this case and the extent of its development, the question which we can properly decide is a narrow one. It is this: Do the allegations of the bill, which include the provision in the notice of sale above quoted, and the allegation with respect to the statement made by the party conducting the sale, make a *prima facie* case in favor of the appellant? We are of the opinion that they do make such a case when considered together. The contention that the trustee did not have power through verbal statements made at the time of the sale to make a sale different from that advertised in the notice of sale has much to commend it, and is sustained in principle by the case of *Vandever* v. *Baker,* 13 Pa. St. (1 Harris) 121. But this rule, we think, presupposes a clear and unambiguous notice of sale. It would be dangerous to permit oral testimony as to verbal representations made by a trustee to control, where in conflict with the plain terms of a written notice of sale, based on the deed of trust, and to set aside a sale on

testimony as to such statements. But the situation may be different where the sale notice in question does not clearly state the land to be sold, or the interest to be sold, or, as in this case, what is to be excepted therefrom. If the sale notice is in fact ambiguous, then, like any other paper, resort may be had to the circumstances under which the paper was prepared or acted upon. In this case, while it may plausibly be contended that the language of the sale notice heretofore quoted, means that only such minerals were excepted as had been theretofore reserved or conveyed, it cannot be said that the construction of the notice is absolutely free from doubt, and there is such ambiguity as in our opinion justifies consideration of testimony as to the construction placed upon the language used in the notice by the party acting thereunder. The bill alleges, in effect, that the trustee did construe the language in question, when he said that only the surface of the land offered was being sold.

We do not at this time pass upon the legal effect of the language used in the notice of sale. It may be that upon full development of the cause we may be called upon to decide what this language means, independently of explanatory testimony; but we have not yet reached that point, and we think that under all the circumstances, the case should be heard upon the allegation as to what the trustee stated at the time of the sale in question, as bearing upon the construction to be given to the language of the sale notice.

The question of whether or not O'Dell and the Mullins Gas Company are innocent purchasers for value, and whether or not the doctrine of laches may be invoked may arise upon the hearing of this cause on its merits. We do not feel that the bill upon its face shows that either of the parties named was an innocent purchaser for value, or that the plaintiff was guilty of laches. Even if we should say that the two deeds for the minerals in question, executed by the appellant and her husband to Georgie M. Berry and by Georgie M. Berry to the appellant, recorded prior to the deed to O'Dell, were not notice

to O'Dell, the bill on its face does not exclude the possibility of other notice of appellant's claim. On the question of laches only the time element appears affirmatively, and that alone is not ordinarily sufficient. The other considerations which might enter into the determination of the question of laches do not appear upon the face of the bill, such as the expenditure of money by O'Dell and the Mullins Gas Company, or the changed circumstances brought about by the development of a gas field. These, we think, are matters of defense not appearing on the face of the bill, and therefore not properly before us on these demurrers.

The decree of the circuit court is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*

KENNA, JUDGE, concurring:

I agree with the conclusion reached by the majority of the Court. However, I do not agree that the notice (advertisement) of sale is to be treated as an ambiguous instrument and that such an ambiguity may be clarified by resorting to the circumstances surrounding the instrument and the parties concerned. In my judgment, the description of the property to be sold contained in such an advertisement under the requirements of subsection (e) of Code, 38-1-4, is to be regarded *per se* as either containing a sufficiently clear description of the property to be offered or as inaccurate or inadequate in that respect. The notice and advertisement are made in part for the purpose of attracting purchasers from the general public, and a confused description of the property, accompanied by the likelihood that a sale would be rendered invalid for that reason, would certainly not attract bidders. Neither would the general public be able to ascertain the property to be offered, or to clarify what the majority opinion terms an "ambiguity" in its description, by resorting to the circumstances under which the advertisement or notice of sale was drawn.

The term ambiguity, as I understand it, applies to an instrument that a court has power to clarify by construction. I do not think that, in a strict sense, an advertisement of sale under a trust deed belongs to that class of instruments. I believe that it is a paper which should contain a sufficiently clear description to identify the property to be offered, though it does not have to single out the property with the accuracy required in a conveyance. Code, 38-1-4; 19 R. C. L. 600, sec. 415. I think that the notice of sale is fatally defective for the reason that it does not sufficiently describe the property to be offered for sale due to the confused description of the mineral interest to be reserved, and that the decree below should be reversed for that reason alone.

Although I regard the question of the trustee's conduct at the sale and his oral announcement as being of secondary importance in this instance, I cannot follow the majority's opinion which, I think by clear implication, lays down a general rule which precludes parol testimony relating to what the trustee orally announced was to be sold. I think that the trustee's announcement of the property to be sold is much more vital and salient than what could be termed "verbal representations". Spoken representations might be as to the value, quality and other "sales talk", to which the rule of *caveat emptor* would apply. But to my mind, and I think under the great weight of authority, this does not apply to a statement of fact required of the trustee and made by him as to what is being offered for sale, including its quantity. I am under the impression that that sort of testimony is admissible even where a trustee's sale is conducted pursuant to a notice containing a clear description of the property. *Crabtree* v. *Price,* 212 Ala. 387, 102 So. 605; *Naugher* v. *Sparks,* 110 Ala. 572, 18 So. 45. In a case of the kind before us which involves a trust sale under a notice of sale containing a confusing description, I believe that testimony of that kind should be admissible not only to show what the trustee in fact offered for

sale, but it is also relevant as bearing upon what resulted from the confusion which existed in the notice of sale, and in that connection, it should be considered, although, perhaps, of secondary importance.

Of course, parol testimony in order to establish what the trustee did in fact offer for sale should be quite clear and convincing if offered to overcome the trustee's report or conveyance. The sufficiency of proof should rest largely in the sound discretion of the trial chancellor.