679 S.E.2d 601

**Ann Morgan ZIMMERER and Gerald Lee Zimmerer, Plaintiffs Below, Appellants,**

v.

**Mark E. ROMANO, Robin J. Romano; and West Virginia Department of Transportation, Division of Highways, Defendants Below, Appellees.**

No. 34269.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 2009.

Decided April 30, 2009.

Ancil G. Ramey, Hannah B. Curry, Steptoe & Johnson PLLC, Charleston, WV, for Appellants, Ann Morgan Zimmerer and Gerald Lee Zimmerer.

Gregory A. Tucker, Gregory A. Tucker, P.L.L.C., Summersville, WV, for Appellees, Mark E. and Robin J. Romano.

G. Alan Williams, Robert B. Paul, WVDOT, Division of Highways, Charleston, WV, for Appellee, West Virginia Department of Transportation, Division of Highways.

PER CURIAM.

The plaintiffs below and appellants herein, Ann Morgan Zimmerer and Gerald Lee Zimmerer [1] (hereinafter referred to separately as "Mrs. Zimmerer" and "Gerald Zimmerer," or collectively as the "Zimmerers"), appeal from an order entered October 12, 2007, by the Circuit Court of Nicholas County. By that order, the circuit court denied the Zimmerers' motion for reconsideration of the circuit court's previous order granting summary judgment to the defendants below and appellees herein, Mark E. Romano and Robin J. Romano (hereinafter referred to collectively as the "Romanos"). The order granting summary judgment to the Romanos was entered June 4, 2007. By that order, the circuit court found that the Romanos were the owners in fee simple of 20.29 acres of land, and further, that the defendant below and

---

1. Gerald Zimmerer is the son of Ann Morgan Zimmerer and has an alleged one-fourth interest in the land that is the subject of this appeal. The land was purportedly conveyed to Gerald Zimmerer by his mother, Mrs. Zimmerer, who is also an appellant in this action.

appellee herein, the West Virginia Department of Transportation, Division of Highways (hereinafter referred to as the "DOH") properly sold a 1.18 acre tract of its right of way interests to the Romanos. Based upon the parties' arguments,[2] the record designated for our consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the decisions of the circuit court, and remand this matter to the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a property dispute over the ownership in fee simple of 20.29 acres of land, as well as the proper right of way ownership of 1.18 acres of land.[3] The property in question was originally part of an 82.65 acre farm in Nicholas County, West Virginia, which had been owned for generations by the Hill family. The 82.65 acre tract of land owned by the Hill family adjoined another ancestral farm, which had been owned by the Zimmerers' family for generations, and remains in the possession of the Zimmerers. There is no challenge to the Zimmerers' current ownership of the Zimmerer family's ancestral farm. Rather, the controversy arises over the ownership rights to the 20.29 acre tract, along with the 1.18 acre right of way contained therein, which

was part of the original Hill family's 82.65 acre ancestral farm.

In 1971, pursuant to an eminent domain action, the DOH was vested with a right of way interest[4] in three separate tracts of land that was part of the Hills' 82.65 acre farm. The rights of way were for the purpose of constructing and improving United States Route 19. The three parcels of land in which the DOH obtained a right of way interest totaled 20.29 acres, and is the land whose ownership is in question before this Court.[5] The two issues before this Court are: (1) the fee simple ownership of the 20.29 acres of land, and (2) the propriety of the DOH's decision to sell 1.18 acres of its right of way interests to the Romanos.[6]

By deed dated April 6, 1995, the Hill family[7] conveyed the ancestral farm to Greenwood Timber, Inc. (hereinafter referred to as "Greenwood Timber").[8] The deed stated "the [Hills] do hereby grant, sell, and convey unto [Greenwood Timber] with Covenants of General Warranty of Title the surface only of that certain tract or parcel of land. . . ." The language is followed by a description of the boundaries of the property, which culminates in the statement that the land described "contain[s] 82.65 acres, more or less." Subsequent to the boundary summary, the deed states that "there is reserved from the above description that previous outconveyance to the West Virginia Department of Highways

---

2. This Court takes notice that the Romanos were represented before this Court and that counsel filed an appellate brief on their behalf. However, counsel for the Romanos did not appear before this Court for oral argument.

3. The 1.18 acre right of way interest is contained within the aforementioned 20.29 acre tract that is also the focus of this appeal.

4. At times throughout the history of this land, the DOH's interest was referred to as a fee simple interest. However, the parties recognize that pursuant to W. Va.Code § 17-2A-17 (1967) (Repl. Vol. 2004), the DOH only acquires a right of way interest when it pertains to a public road and real property. There is no dispute among the parties that the interest in the 1.18 acres of land held by the DOH was a right of way interest, and that a right of way interest was the only type of interest that the DOH could convey.

5. The 20.29 acres of right of way interests were composed of both controlled and non-controlled rights of way. A " '[c]ontrolled-access highway'

means every highway, street, or roadway in respect to which owners or occupants of abutting lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street, or roadway." W. Va.Code § 17C-1-41 (1963) (Repl. Vol. 2004).

6. There is no question that the DOH maintains its right of way interests in the remaining land in the original 20.29 acre tract.

7. The ownership of the Hills' land was comprised of different Hill heirs, all of whom combined to sell their ownership rights to Greenwood Timber and, subsequently, to the Zimmerers.

8. The amount of land transferred by this deed is part of the issue in the instant appeal.

of 20.29 acres, leaving a residue of 62.36 acres, more or less."

Thereafter, on November 19, 1998, Greenwood Timber conveyed a portion of its land to the Romanos. The 1998 deed contained the same property boundary description as the 1995 deed from the Hills to Greenwood Timber, along with the same language that the land described "contain[s] 82.65 acres, more or less." The deed further states that "this conveyance is subject to all previous outconveyances of record, including the following: (1) That 20.29 acres previously conveyed unto the West Virginia Department of Highways...." Greenwood Timber also reserved to itself a portion of property out of the description of the original property boundaries.

The Hill heirs, believing that the 1995 deed to Greenwood Timber had reserved to them a fee simple interest in the 20.29 acres of land that was encumbered by the DOH's right of way interests, purportedly conveyed fee simple title to the 20.29 acres to the Zimmerers by quitclaim deeds in 1997, 1998, and 2002.[9] The Zimmerers own the farmland adjoining the 20.29 acres that were purportedly conveyed to them by the Hills. Mrs. Zimmerer then conveyed an undivided one-fourth fee simple interest in the 20.29 acres to her son and appellant herein, Gerald Zimmerer. Thus, the Zimmerers maintain that they own the 20.29 acres in fee simple as the grantees from the Hill heirs. Conversely, the Romanos allege that the deed from the Hills to Greenwood Timber did not reserve fee simple ownership interests to the Hills but, rather, only reserved to the Hills the interests of the DOH, which were right of way interests. Because the Romanos contend that the Hills passed fee simple ownership of the land to Greenwood Timber, the Romanos contend that they received the fee simple title to the land pursuant to the 1998 outconveyance from Greenwood Timber.

The Romanos and the Zimmerers, both believing that they owned the 20.29 acres in fee simple encumbered by the right of way

interests of the DOH, approached the DOH on separate occasions and requested the option to purchase portions of the right of way interests maintained by the DOH. The DOH determined that it no longer needed 1.18 acres of the 20.29 right of way interests, and further, that without this 1.18 acre right of way interest, the Romanos would be landlocked with no point of ingress or egress from their property to the public road. Thus, the DOH asserts that, in compliance with W. Va.Code § 17–4–47 (1963) (Repl. Vol. 2004), it sold a 1.18 acre right of way interest to the Romanos.

In 2004, the Zimmerers filed the underlying action to eject the Romanos from land that the Romanos claim is their sole property. Both the Zimmerers and the Romanos filed motions for summary judgment. A hearing was conducted before the circuit court on February 12, 2007. In its June 4, 2007, order, the circuit court granted summary judgment to the Romanos. In so ruling, the circuit court found that

4. The Commissioner of the West Virginia Department of Transportation, Division of Highways, conveyed ... 1.18 acres of the original 82.65 acres to Mark E. Romano and Robin J. Romano. Giving said 1.18 acre parcel to anyone other than the [Romanos] would block Romanos' access to U.S. Route 19.

5. The Commissioner of the West Virginia Department of Transportation, Division of Highways, did not abuse his discretion in conveying the 1.18 acre excess right of way to Mark E. Romano and Robin J. Romano.

6. The deed from the Hill heirs to Greenwood Timber, Inc.[,] dated April 6, 1995[,] ... described the entire 82.65 parcel reserving only therefrom the 20.29 acres right of way previously vested in the West Virginia Department of Highways. The deed by its own language conveyed to Greenwood Timber, Inc.[,] the entire 82.65 acre parcel reserving only the 20.29 acres and right of way previously vested in the

9. The 1997 quitclaim deed conveyed the interests of James Hill, Jr. and his wife. In 1998, Thomas Watkins Perry, Sr., as the surviving spouse of Ruth Hill Perry, conveyed his land interests to

the Zimmerers. William Hill, in 2002, conveyed his and his wife's interests in the land to the Zimmerers.

West Virginia Department of Highways by virtue of the Order of the Circuit Court of Nicholas County, West Virginia.

7. The deed from Greenwood Timber, Inc.[.] to Mark E. Romano and Robin J. Romano dated November 19, 1998[,] ... conveyed to the Romanos 82.65 acres less the 20.29 acre right of way previously vested in the West Virginia Department of Highways. Said deed further reserved additional properties which were not the subject of this civil action.

8. The Hill heirs by quitclaim deeds of record in the aforesaid clerk's office conveyed nothing to ... [Mrs. Zimmerer] as the Hill heirs owned no interest in the original 82.65 acre parcel or the 20.29 acre right of way as their deed to Greenwood Timber, Inc.[,] reserved nothing to them.

9. The [Romanos] are vested with fee simple title to the entire interest in the 1.18 acre parcel by virtue of the deed to them from Greenwood Timber, Inc.[,] dated November 19, 1998[,] ... and further by virtue of the quitclaim deeds from the West Virginia Department of Transportation, Division of Highways, hereinabove referenced. The [Zimmerers] own no interest in any portion of the rights of way vested in the West Virginia Department [of] Highways by virtue of that certain condemnation action styled *West Virginia Department of Highways, et als. [sic] vs. William Guy Hill, et al.*, Nicholas County Action No. 2127.

Thus, the circuit court ruled that the Romanos are the proper owners in fee simple of the 20.29 acres of land and, further, that the DOH properly sold a 1.18 acre right of way interest to the Romanos. The lower court found that the Zimmerers received nothing in the outconveynaces from the Hill heirs because the Hill heirs had previously conveyed all of their interests, except for retaining a right of way interest held by the DOH in the 20.29 acres, when they conveyed the property to Greenwood Timber. The Zimmerers filed a motion asking the circuit court to reconsider its prior rulings, which was denied by order entered October 12, 2007. From these adverse rulings, the Zimmerers appeal to this Court.

## II.

### STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order granting summary judgment in favor of the Romanos, and its subsequent denial of the Zimmerers' motion for reconsideration pursuant to West Virginia Rule of Civil Procedure 59(e).[10] It has long been held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, the same *de novo* standard of review applies to the denial of the Rule 59(e) motion to alter or amend:

" 'The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.' Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syllabus point 2, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999).

Syl. pt. 1, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W.Va. 83, 543 S.E.2d 364 (2001).

In undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v.*

---

10. *See* Syl. pt. 2, in part, *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996) ("If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e).").

*Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). Syl. pt. 2, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* We are also cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.*

██ The facts of this case call upon this Court to interpret a written deed. Thus, we apply a *de novo* standard of review to the circuit court's interpretation of the contract. *See HN Corp. v. Cyprus Kanawha Corp.,* 195 W.Va. 289, 294, 465 S.E.2d 391, 396 (1995) (per curiam) ("We note that the *de novo* review standard applied to a circuit court's entry of summary judgment is the same standard we apply when we review questions of law.... Whether a contract is ambiguous is a legal question reviewable by this Court *de novo.*" (citations omitted)).

██ Because resolution of this matter also requires the application of statutes, we note that

> "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie*

*A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syllabus point 3, *Alden v. Harpers Ferry Police Civil Service Commission,* 209 W.Va. 83, 543 S.E.2d 364 (2001).

Syl. pt. 1, *State v. Brandon B.,* 218 W.Va. 324, 624 S.E.2d 761 (2005). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

██ On appeal to this Court, the Zimmerers assert that the circuit court incorrectly applied the law regarding the proper transfer and ownership in fee simple of real property and the proper procedure for selling a right of way for a public road vacated as surplus.[11] We will address these contentions separately.

### A. Fee Simple Interest

The Zimmerers first argue that the circuit court erred in its conclusion that the Romanos own the fee simple interest to the 20.29 acre property that originally belonged to the Hill heirs. The Romanos' arguments reiterate their position that the Hills did not maintain a fee simple interest; thus, they could not convey the same to the Zimmerers. Thus, as asserted by the Romanos, the Hills conveyed all of their interests to Greenwood Timber who, in turn, conveyed its interests to the Romanos, leaving the fee simple ownership of the 20.29 acres with the Romanos.

Central to the disposition of this issue is an interpretation of language contained in a deed of property conveyance from the Hill heirs to Greenwood Timber. Specifically, the

---

**11.** In the alternative, the Zimmerers argue that the circuit court erred in granting summary judgment to the Romanos because genuine issues of material fact existed. The Zimmerers, on motion for summary judgment, submitted to the circuit court that there was no genuine issue of material fact on the issue of the property interests. However, upon receiving an adverse ruling on that issue, the Zimmerers then asserted that the issue was not ripe for decision and should be remanded for further factual development and tried by a jury. While it may now suit the Zimmerers to make this argument to this Court, we find it to be without merit because the facts are sufficiently developed for review. "Where

the right of a party to recover, in ejectment, depends solely upon the construction of his deed, in the light of the undisputed facts, the question is one of law for the court, and not one of fact for the jury." Syl. pt. 5, *Davis Colliery Co. v. Westfall,* 78 W.Va. 735, 90 S.E. 328 (1916). *See also* Syl. pt. 2, *Prickett v. Frum,* 101 W.Va. 217, 132 S.E. 501 (1926) ("Where the description of a parcel of land in a deed is certain, and buttressed by documentary evidence, parol testimony cannot be used to enlarge the scope of the descriptive words so as to include another and distinct parcel owned by the grantor. In such case the construction of the deed is for the court, and not for the jury.").

1995 deed stated that "there is reserved from the above description that previous outconveyance to the West Virginia Department of Highways of 20.29 acres, leaving a residue of 62.36 acres, more or less." In its interpretation of this language, the circuit court found that "[t]he deed by its own language conveyed to Greenwood Timber, Inc.[,] the entire 82.65 acre parcel reserving only the 20.29 acres and right of way previously vested in the West Virginia Department of Highways[.]" Further, the circuit court's order stated that "[t]he Hill heirs ... conveyed nothing to [Mrs. Zimmerer] as the Hill heirs owned no interest in the original 82.65 acre parcel or the 20.29 acre right of way as their deed to Greenwood Timber, Inc.[,] reserved nothing to them." In making its rulings, the circuit court found that the deed language was clear on its face and that the four corners of the document controlled. Thus, the lower court declined to look to any evidence outside of the deed itself. We disagree with the circuit court's interpretation of the language in the 1995 deed from the Hill heirs to Greenwood Timber, which ruling found that the language was clear and unambiguous.

■■■ At the outset, we note that the general rule is that " '[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company*, 147 W.Va. 484, 128 S.E.2d 626 (1963)." Syl. pt. 1, *Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 332 S.E.2d 597 (1985). "In the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them." *Davis v. Hardman*, 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963) (internal citations omitted). Further guidance is provided in the principle that

"[i]n construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free

from doubt, unless to do so will violate some principle of law inconsistent therewith." Pt. 1, syllabus, *Maddy v. Maddy*, 87 W.Va. 581[, 105 S.E. 803 (1921) ].

Syl. pt. 5, *Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961). *But cf.* Syl. pt. 9, *Paxton v. Benedum–Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917) ("Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous.").

■■■ In the case presently pending before this Court, the lower court found that the words of the deed were clear. We disagree. The words at issue in the 1995 deed from the Hill heirs to Greenwood Timber stated that "there is reserved from the above description that previous outconveyance to the West Virginia Department of Highways of 20.29 acres, leaving a residue of 62.36 acres, more or less." The subsequent outconveyance from the Hill heirs to the Zimmerers makes it apparent that the Hill heirs believed that they reserved to themselves 20.29 acres in fee simple interests. Conversely, the Romanos argue that the Hill heirs retained only the 20.29 acres in the DOH's right of way interests. While the reason as to why the Hills would want to retain a right of way interest that belongs to the DOH is not explained, the Romanos, nonetheless, argue that the Hills retained only to themselves the interests held by the DOH. It is clear that the deed is capable of more than one interpretation as to the reservation of interests by the Hills. The question remains whether (1) the 1995 deed from the Hill heirs to Greenwood Timber conveyed 82.65 acres, with the Hill heirs reserving to themselves a 20.29 acre interest in fee simple or whether (2) the Hill heirs conveyed all of the land and reserved to themselves only the 20.29 acres in right of way interests held by the DOH.

■■■ Generally, the language of a deed, when clear, will be applied without resort to rules of interpretation and construction. However, when a deed is unclear and ambiguous on its face, our State jurisprudence directs that a court must look to evidence of the parties' intent in construing the deed. *See* Syl. pt. 1, *State v. Herold*, 76 W.Va. 537, 85 S.E. 733 (1915) ("For ascer-

tainment of the intent of the parties to a deed, in which the description of the subject matter is inconsistent, contradictory, and ambiguous, extrinsic evidence is admissible."). Further, this Court has stated as follows:

> To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous transactions and collocutions of the parties are admissible, for the purpose of identifying the particular object intended.

Syl. pt. 2, *Snider v. Robinett,* 78 W.Va. 88, 88 S.E. 599 (1916). *See also* Syl. pt. 2, *Berry v. O'Dell,* 122 W.Va. 58, 7 S.E.2d 340 (1940) ("Where a notice of sale under a deed of trust is ambiguous as to the property to be offered for sale, or as to any estate or interest to be excepted therefrom, testimony as to the interpretation of the notice by the trustee making the sale, at the time of and as a part of the sale, is admissible on the question of what property was actually sold."); Syl. pt. 10, *Paxton v. Benedum–Trees Oil Co.,* 80 W.Va. 187, 94 S.E. 472 (1917) ("Proper parol evidence is admissible to explain a latent ambiguity in a written contract, and a latent ambiguity is one which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object sought to be accomplished by the contract or the subject which they describe."); Syl. pt. 2, *Bank v. Catzen,* 63 W.Va. 535, 60 S.E. 499 (1908) ("When, in attempting to apply a deed to its subject matter or the parties thereto, a latent ambiguity of any kind is disclosed, parol evidence is admissible to a limited extent, to show what was intended, not only by the instrument considered as a whole, but also by particular words or clauses thereof."); Syl. pt. 3, *id.* ("Parol evidence, admissible for such purpose, is generally limited to the subject-matter, the relation of the parties thereto, their prior and subsequent conduct, their situation, and all the facts and circumstances existing at the time of the execution of the instrument.").

Further, " ' "[w]here there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee." Pt. 6, syllabus, *Paxton v. Benedum–Trees Oil Co.,* 80 W.Va. 187[, 94 S.E. 472 (1917) ].' Syl. Pt. 3, *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961)." Syl. pt. 5, *Cottrill v. Ranson,* 200 W.Va. 691, 490 S.E.2d 778 (1997). *See also* Syl. pt. 3, *West Virginia Dep't of Highways v. Farmer,* 159 W.Va. 823, 226 S.E.2d 717 (1976) ("Where an ambiguity exists in a deed, the language of such deed will be construed most strongly against the grantor.").

While the circuit court refused to look to evidence outside of the language of the deed in construing the intent of the parties, this Court finds such an analysis to be necessary in light of the ambiguity in the deed regarding the Hill heirs' reservation of rights. In the underlying case before the trial court, the Zimmerers submitted evidence in the form of affidavits. This evidence was not considered by the circuit court; however, this Court finds a review of such evidence necessary in light of the ambiguity in the 1995 deed from the Hill heirs to Greenwood Timber. One affidavit was submitted by James William Hill, Jr. The affidavit stated, in pertinent part, as follows:

> My siblings and I advertized and sold 62.36 acres more or less to GREENWOOD TIMBER INC[.], a West Virginia corporation, on the 6th day of April, 1995, reserving all of the three tracts previously taken by the West Virginia Department of Highways. We never intended to, nor did we, sell our interests in the three tracts of lands taken by the West Virginia Highway Department to Greenwood Timber; we reserved that interest to ourselves as outlined in the deed to Greenwood Timber ...
>
> On July 28, 1997, my wife, Ann, and I sold by Quitclaim Deed all my (our) 50 per cent undivided interest in the 20.29 acres more or less, which had been taken by the West Virginia Department of Highways, to ANN

MORGAN ZIMMERER, my former neighbor and owner of an interest in the adjoining property.... I intended and did sell all my rights, title and interest in the 20.29 acres more or less which we had specifically retained when we sold to Greenwood Timber, Inc.[,] to ANN MORGAN ZIMMERER.

Further, a second affidavit from Thomas Watkins Perry, Sr., as the surviving spouse of Ruth Hill Perry, stated:

We, RUTH HILL PERRY and I, specifically, did not intend to convey to GREENWOOD TIMBER, INC.[,] the property taken by the West Virginia Department of Highways. We never intended to, nor did we, sell our interests in the three tracts of land taken by the West Virginia Highway Department to GREENWOOD TIMBER, INC.

After becoming aware of the West Virginia Supreme Court Decision as outlined in *McCOY v. Vankirk* 201 W.Va. 718, 500 S.E.2d 534 (1997), I did intend and did sell my rights, title and interest in the three tracts of land taken ... by the West Virginia Department of Highways, by Quitclaim Deed, to ANN MORGAN ZIMMERER, former neighbor of the Hill family, whose property adjoins ours. I understood that JAMES WILLIAM HILL, JR., who owned his own and the interest of EUGENE L. HILL, sold his interests some years ago to ANN MORGAN ZIMMERER.

Finally, an affidavit was submitted by Larry E. Losch, who was the attorney who prepared the 1995 deed in question from the Hill heirs to Greenwood Timber. In his affidavit, Mr. Losch stated as follows:

I prepared a deed dated the 6th day of April, 1995, from James W. Hill, Jr.[,] and others, to Greenwood Timber, Inc., a West Virginia corporation[.]

I have been advised that the interpretation of a provision in this deed is a material issue in a civil action now pending....

I have specific memory of preparing the said deed.

I prepared the said deed at the request and direction of James W. Hill, Jr[.] I recall discussing the transaction and deed preparation with James W. Hill, Jr[.]

It was Mr. Hill's intention to reserve the residue of the 20.29 acres referred to in the deed to he and the other joint tenants, not merely to create an exception for the right of way encumbering the 20.29 acres from the 82.65 acres described in the deed. The language appearing in the deed stating, "However, there is reserved from the above description that previous outconveyance to the West Virginia Department of Highways of 20.29 acres, leaving a residue of 62.36, more or less.", was intended to effect this reservation.

▬▬▬ The circuit court's ruling regarding the reservation of the 20.29 acres to the Hill heirs effectively accords no significance to the language of the deed.[12] The underlying ruling made by the circuit court essentially found that the Hill heirs reserved to themselves only the DOH's right of way interests, even though such property was already properly held by the DOH pursuant to the 1971 eminent domain action. Such an interpretation is clearly wrong, especially in light of the extrinsic evidence in the form of

---

12. As previously recognized by this Court,

West Virginia Code § 36-1-11 (1923) (Repl. Vol. 1997) explains that the estate which is conveyed or devised by deed may well be limited by an intention appearing in the conveyance:

When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.

*Id.* Our well-established case law likewise recognizes that when confronted with construing a deed, "the intention of the grantor controls" which requires that "the whole instrument, not merely and separately disjointed parts, is to be considered." Syl. Pt. 6, in part, *Uhl v. Ohio River R. Co.*, 51 W.Va. 106, 41 S.E. 340 (1902). We have also said that the polar star which should guide courts in the construction of deeds is the intention of the parties making the instrument. *Totten v. Pocahontas Coal & Coke Co.*, 67 W.Va. 639, 642, 68 S.E. 373, 374 (1910).

*Belcher v. Powers*, 212 W.Va. 418, 424, 573 S.E.2d 12, 18 (2002) (per curiam).

the affidavits. Based on the clear intentions of the Hill heirs as shown in the submitted affidavits, it is clear that the 1995 deed from the Hill heirs to Greenwood Timber reserved to themselves a fee simple interest in the 20.29 acres encumbered by the DOH's right of way interests. Thus, the Romanos could not receive the same by conveyance from Greenwood Timber as Greenwood Timber had no such interests to convey. The Hill heirs subsequently conveyed the fee simple interests in the 20.29 acres to the Zimmerers. Therefore, the circuit court's ruling finding that the Romanos own the 20.29 acres in fee simple is reversed, and this case is remanded for entry of an order finding the Zimmerers, as the successors in interest to the Hills, to be the owners in fee simple of the 20.29 acres.

## B. Right of Way Interest

The Zimmerers next argue that the circuit court erred in its conclusion that the DOH properly sold 1.18 acres of its right of way interests to the Romanos. The Zimmerers argue that the DOH should have offered the 1.18 acres of right of way interests, as surplus, to the Zimmerers for purchase as they were either "principal abutting landowners" or "abutting landowners" pursuant to W. Va. Code § 17–2A–19 (1999) (Repl. Vol. 2004).[13]

---

13. W. Va.Code § 17–2A–19 (1999) (Repl. Vol. 2004) provides in its entirety:

(a) The division of highways, subject to the provisions of this section, may sell, exchange or lease real property, or any interest or right in the property, held by the division of highways. When the real property, or any interest or right in the property, is being held for future road purposes, it may be leased.

(b) This subsection applies to property held by the division, including a right-of-way, that was not acquired for use, or used, as a highway. When the real property, or any part of the property, or any interest or right in the property, is considered by the commissioner not necessary, or desirable for present or presently foreseeable future division of highways purposes, it may be exchanged for other real property, or any interest or right in the property, considered by the commissioner to be necessary or desirable for present or presently foreseeable future division of highways purposes, or it may be sold. In addition the division may exchange real property, or any part of the property, or any interest or right in the property, even though it may be necessary or desirable for present or presently foreseeable future division of highways purposes, if the exchange is made for other real property, or any interest or right in the property, in close proximity to the property which the commissioner considers of equal or superior useful value for present or presently foreseeable future division of highways purposes. In making exchanges the division may make allowances for differences in the value of the properties being exchanged and may move or pay the cost of moving buildings, structures or appurtenances in connection with the exchange.

Every sale of real property, or any interest or right in the property or structure on the property, shall be at public auction in the county in which the real property, or the greater part of the property, is located, and the division shall advertise, by publication or otherwise, the time, place, and terms of the sale at least twenty days prior to the sale. The property shall be sold in the manner which will bring the highest and best price. The division may reject any or all bids received at the sale. The commissioner shall keep a record, open to public inspection, indicating the manner in which the real property, or any interest or right in the property or structure on the property, was publicly advertised for sale, the highest bid received and from whom, the person to whom sold, and payment received. The record shall be kept for a period of five years and may be destroyed after five years.

(c)(1) This subsection applies to property held by the division, including a right-of-way, that was acquired for use, or used, as a highway. The commissioner may transfer, sell or otherwise dispose of any right-of-way properties or any interest or right in the property, owned by or to be acquired by the division of highways which the commissioner in his or her sole discretion determines are not necessary or desirable for present or presently foreseeable future highway purpose by first offering the property to the principal abutting landowners without following the procedure for public auction provided in subsection (b) of this section.

(2) The commissioner shall propose rules for legislative approval in accordance with the provisions of article three [§ 29A–3–1 et seq.], chapter twenty-nine-a of this code governing and controlling the making of any leases or sales pursuant to the provisions of this subsection. The rules may provide for the giving of preferential treatment in making leases to the persons from whom the properties or rights or interests in the property were acquired, or their heirs or assigns and shall also provide for granting a right of first refusal to abutting landowners at fair market value in the sale of any real estate or any interest or right in the property, owned by the division of highways.

(3)(A) With respect to real property acquired subsequent to the year one thousand nine hundred seventy-three for use as a highway through voluntary real estate acquisition or

Additionally, the Zimmerers argue that application of this section would require that they be afforded the right of first refusal in purchasing any surplus right of way interests from the DOH. Conversely, the Romanos argue that the sale of the 1.18 acres of right of way interests was proper so as to prevent them from being landlocked. The DOH re-

exercise of the right of eminent domain, which real estate the commissioner has determined should be sold as not necessary for highways purposes, the commissioner shall give preferential treatment to an abutting landowner if it appears that:

(i) A principal abutting landowner is an individual from whom the real estate was acquired or his or her surviving spouse or descendant. In order to qualify for preferential treatment, the surviving spouse or descendant need not be a beneficiary of the individual. The terms used in this subdivision are as defined in section one [§ 42–1–1], article one, chapter forty-two of this code; and

(ii) The primary use of the abutting property has not substantially changed since the time of the acquisition.

(B) When the provisions of paragraph (A) of this subdivision are met, the commissioner shall offer the property for sale to the principal abutting landowner at a cost equal to the amount paid by the division of highways in acquiring the real estate. If improvements on the property have been removed since the time of the acquisition, the cost shall be reduced by an amount attributable to the value of the improvements removed. The cost may be adjusted to reflect interest at a rate equal to the increase in the consumer price index for all urban consumers as reported by the United States department of labor since the time of disbursement of the funds.

(d) The commissioner may insert in any deed or conveyance, whether it involves an exchange, lease or sale, the conditions as are in the public interest and have been approved in advance by the governor.

(e) All moneys received from the exchange, sale, or lease of real property, or any right or interest in the property, shall be paid into the state treasury and credited to the state road fund.

(f) Notwithstanding the provisions of this section, property may not be transferred, sold or otherwise disposed of unless the commissioner finds that the right-of-way or other property has no significant value to the state as a hiking trail and does not serve as a link between two or more state owned properties. This subsection does not apply to property that lies within six hundred feet of any dwelling house.

14. W. Va.Code § 17–4–47 (1963) provides in its entirety:

lies on W. Va.Code § 17–4–47 (1963) (Repl. Vol. 2004) [14] for its position that the sale to the Romanos was proper.

The arguments by the parties necessitate this Court's review of two separate statutes. Applicable to interpretation of all statutes, we have previously explained that the first step in a statutory analysis is to

(a) Access to and from state highways from and to real property used or to be used for commercial, industrial or mercantile purposes or from and to real property that is subdivided into lots is a matter of public concern and shall be regulated by the state road commissioner to achieve the following purposes:

(1) To provide for maximum safety of persons traveling upon, entering or leaving state highways;

(2) To provide for efficient and rapid movement of traffic upon state highways;

(3) To permit proper maintenance, repair and drainage of state highways; and

(4) To facilitate appropriate public use of state highways.

(b) Except where the right of access has been limited by or pursuant to law, every owner or occupant of real property abutting upon any existing state highway has a right of reasonable means of ingress to and egress from such state highway consistent with those policies expressed in subsection (a) of this section and any regulations issued by the commissioner under section forty-eight [§ 17–4–48] of this article.

(c) If the construction, relocation, or reconstruction of any state highway, to be paid for in whole or in part with federal or state road funds, results in the abutment of real property as defined in subsection (a) of this section on such state highway that did not previously abut on it, no rights of direct access shall accrue because of such abutment, but the commissioner may authorize and limit access, if any, from such property compatible with the policies stated in subsection (a) of this section and any regulations issued by the commissioner under section forty-eight [§ 17–4–48] of this article.

(d) The policies expressed in this section are applicable to state highways generally and shall in no way limit the authority of the state road commissioner to establish controlled-access facilities under the provisions of sections thirty-nine through forty-six [§§ 17–4–39 to 17–4–46] of this article.

(e) Any unauthorized access to a state highway may be removed, blocked, barricaded or closed in any manner deemed necessary by the commissioner to protect the public and enforce the policies of this section and sections forty-eight, forty-nine and fifty [§§ 17–4–48, 17–4–49 and 17–4–50] of this article.

identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Next, we look to the specific language used by the Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Accord Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

■■■■■ The first statute at issue herein, W. Va.Code § 17–2A–19, provides for the procedure to be employed by the DOH in the sale, exchange, or lease of real property. The Zimmerers argue that its application would require the DOH, once it determined that it had any excess interests, to sell such interests to the Zimmerers as either principal abutting landowners or abutting landowners.[15] This Court has had previous occasion to review W. Va.Code § 17–2A–19. In so doing, we found as follows: "Applying the plain language of the statute, abutting landowners must receive preferential treatment when purchasing state property pursuant to W. Va.Code, 17–2A–19 (1988)." Syl. pt. 3, in part, *Mills v. VanKirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994). Further,

[u]nder *W. Va.Code*, 17–2A–19 [1994], all abutting landowners (whether "principal abutting landowners" or not) must receive preferential treatment when the Commissioner of the Division of Highways chooses to sell state highways property that the Commissioner has determined is not necessary for present or future use. The statute directs that the Commissioner must offer to sell property acquired after 1973 that has not substantially changed since its acquisition to principal abutting landowners at a cost equal to the amount paid in acquiring the real estate, plus costs and interest. The Commissioner may also first offer to sell right-of-way property to principal abutting landowners without following the procedures for a public auction. The Commissioner must offer all other abutting property owners the first right to purchase the highways property for fair market value.

Syl. pt. 3, *McCoy v. VanKirk*, 201 W.Va. 718, 500 S.E.2d 534 (1997). Thus, based on this Court's previous interpretation of this statutory code section,[16] we agree with the Zimmerers that the DOH is normally required to dispose of excess property by first offering it for sale to all abutting landowners.

■■■■ However, our analysis does not stop with the application of W. Va.Code § 17–2A–19. The DOH contends that sale of the right of way interest to the Romanos was necessary to maintain compliance with W. Va.Code § 17–4–47. When two statutes address the same subject matter, this Court attempts to construe the statutes *in pari materia* to give effect to the full intent and meaning of both legislative enactments. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361. "[W]here two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to

---

**15.** Because of this Court's decisions in this case, a discussion regarding "principal abutting landowners" and "abutting landowners" is unnecessary.

**16.** Pursuant to the rule-making authority set forth in W. Va.Code § 17–2A–19, corollary regulations were enacted that illustrate and expand the understanding of the application of this statutory section. *See* W. Va.C.S.R. § 157–2–1 (1995).

each." Syl. pt. 4, in part, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958). If, however, the two statutes cannot be reconciled, the language of the more specific promulgation prevails. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord Tillis v. Wright,* 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg,* 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (citations omitted)); *Daily Gazette Co., Inc. v. Caryl,* 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute when an unreconcilable conflict arises between the terms of the statutes." (citations omitted)).

Viewing the two statutes at issue herein, W. Va.Code § 17–2A–19 is clearly a more general statute explaining the DOH's process in disposing of excess property. W. Va.Code § 17–4–47 is a more specific statute setting forth mandatory rights of access for property owners and the constraints on the DOH in impairing any such access. Because it is the more specific statute, W. Va.Code § 17–4–47 prevails as the controlling statute. Under the specific statute, the DOH sold the right of way interest to the Romanos because, otherwise, they would be landlocked without means of ingress and egress from their property to the public road.[17]

This Court recognizes that the normal interpretation of W. Va.Code § 17–2A–19 would require the DOH to make excess property available to all abutting landowners, including the Zimmerers. However, W. Va. Code § 17–4–47, under the facts of this case, is inconsistent with W. Va.Code § 17–2A–19. That is, in this case, both the Zimmerers and the Romanos sought to purchase property from the DOH. A literal interpretation of W. Va.Code § 17–2A–19 suggests that the DOH had to make the property initially available to the Zimmerers, the Romanos, and any other abutting landowner. However, in the present case, the Romanos need access by means of ingress and egress to and from the public road. Therefore, because of this specific need, which was not shown to be required by any other party, the DOH was mandated to convey the right of way interests to the Romanos pursuant to W. Va.Code § 17–4–47.

This Court wishes to make clear that, generally, the DOH's disposition of real property must comply with the excess statute, namely, W. Va.Code § 17–2A–19. Our decision to permit the DOH to depart from that normal procedure is only when, such as is the case here, an abutting landowner has shown a need for the property for ingress and egress. Therefore, the circuit court's decision that the DOH properly sold its 1.18 acres of right of way interests to the Romanos is affirmed.

## IV.

## CONCLUSION

Based on the foregoing, we affirm, in part, and reverse, in part, the decisions of the circuit court, and remand this matter to the circuit court.

Affirmed, in part; Reversed, in part; and Remanded.

---

**17.** In applying this statute, this Court is aware that the Zimmerers argue that this section does not apply to the current case. The Zimmerers assert that the statutory section does not apply to controlled-access facilities, and, further, they contend that the subject right of way is a controlled access right of way. However, the DOH asserts that the subject right of way is a non-controlled access right of way, and such determination is supported by letters in the record from the DOH to the Zimmerers. Because the Zimmerers offer no evidence to support their claim other than their verbal assertion, this Court will defer to the classification of the property by the DOH as being non-controlled.